IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES K. BENEFIELD and | ) | |
| CAROLYN SUE SCOTT, individually | ) | |
| and on behalf of others similarly situated, | ) | |
| being the members of Proposed Class A; | ) | |
| ELGIN EDWARDS and | ) | |
| DANYELL SLAYTON, individually | ) | |
| and on behalf of others similarly situated, | ) | |
| being the members of Proposed Class B; | ) | |
| and LORI ABBOTT and | ) | CIVIL ACTION NO. 2:09-cv-232-WHA-CSC |
| DONALD RAY JOHNSON, individually | ) | |
| and on behalf of others similarly situated, | ) | |
| being the members of Proposed Class C, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ......................................................................................................4

     A.      Legal Standard. ........................................................................................4

     B.      The Trespass Claim (Count I) Should Be Dismissed Because Plaintiffs Do
         Not Allege Exclusive Possession Or Substantial Damage To Their Land. ...............5

     C.      The Public Nuisance Claim (Count II) Should Be Dismissed Because
         Plaintiffs Lack Standing And Have Not Alleged Injury............................................7

          1.      Plaintiffs Do Not Have Standing To Assert A Public Nuisance
              Claim........................................................................................ 7

          2.      Plaintiffs Have Not Alleged Injury. ................................................ 8

     D.      The Private Nuisance Claim (Count III) Also Fails As A Matter Of Law
         And Should Be Dismissed. ........................................................................9

     E.      Plaintiffs' Claims For Negligence (Count IV) And Wantonness (Count V)
         Must Be Dismissed Because Plaintiffs Do Not Adequately Plead Facts
         Showing A Breach Of Duty Or Damages..................................................10

     F.      Plaintiffs' Allegations Do Not Support A Claim For Negligence Per Se
         (Count VI)................................................................................................13

     G.      Plaintiffs Do Not Allege Facts Establishing That Running A Paper Mill Is
         An Abnormally Dangerous Activity (Count VII)......................................16

     H.      The Fraudulent Suppression Claim (Count VIII) Must Be Dismissed. ....................19

          1.      Plaintiffs Fail To Satisfy Their Heightened Pleading Burden. ................... 19

          2.      Plaintiffs Fail To State A Fraudulent Suppression Claim Under
              Alabama Law. ......................................................................... 21

III.    CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**<u>Cases</u>**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**<u>Page(s)</u>**

*Abrams v. Ciba Specialty Chems. Corp.*,
　No. 08-0068-WS-B, 2008 WL 4183344 (S.D. Ala. Sept. 10, 2008) ........................................ 4

*AmSouth Bank, N.A. v. City of Mobile*,
　500 So. 2d 1072 (Ala. 1986) ............................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................. *passim*

*Borland v. Sanders Lead Co.*,
　369 So. 2d 523 (Ala. 1979) ............................................................................................ 5, 6

*Brantley v. Int'l Paper Co.*,
　2:09-cv-230-WHA (M.D. Ala. Mar. 20, 2009) ...................................................................... 8

*Clark v. Container Corp. of Am., Inc.*,
　936 F.2d 1220 (11th Cir. 1991) ......................................................................................... 17

*Conley v. Gibson*,
　355 U.S. 41 (1957) ........................................................................................................... 11

*Cook's Pest Control, Inc. v. Rebar*,
　— So. 2d —, 2009 WL 418074 (Ala. 2009) ............................................................. 13, 15, 16

*Dickinson v. Land Developers Constr. Co.*,
　882 So. 2d 291 (Ala. 2003) .............................................................................................. 13

*Duncan v. City of Tuscaloosa*,
　60 So. 2d 438 (Ala. 1952) ................................................................................................ 10

*E S Robbins Corp. v. Eastman Chem. Co.*,
　912 F. Supp. 1476 (N.D. Ala. 1995) ............................................................................. 17, 18

*Ellis v. Alabama Power Co.*,
　431 So. 2d 1242 (Ala. 1983) ........................................................................................... 9, 10

*Evans v. Walter Indus., Inc.*,
　579 F. Supp. 2d 1349 (N.D. Ala. 2008) ............................................................................... 4

*Ex Parte Household Retail Services*,
　744 So. 2d 871 (Ala.1999) ............................................................................................... 21

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                    **Page(s)**

*Fike v. Peace*,
   964 So. 2d 651 (Ala. 2007)..................................................................... 17, 18

*In re Burbank Envt'l Litig.*,
   42 F. Supp. 2d 976 (C.D. Cal. 1998) ............................................................ 18

*Lacey v. Morris*,
   110 So. 379 (Ala. 1926)............................................................................. 6

*Nat'l S. Prods. Corp., Inc. v. City of Tuscaloosa*,
   20 So. 2d 329 (Ala. 1944) ......................................................................... 10

*Papasan v. Allain*,
   478 U.S. 265 (1986).................................................................................. 4

*Park Center, Inc. v. Champion Int'l Corp.*,
   804 F. Supp. 294 (S.D. Ala. 1992) ............................................................ 10

*Parker Bldg. Servs. Co. v. Lightsey*,
   925 So. 2d 927 (Ala. 2005)............................................................... 13, 14, 15

*Peters v. Amoco Oil Co.*,
   57 F. Supp. 2d 1268 (M.D. Ala. 1999) .................................................... 19, 20

*Prill v. Marrone*,
   — So. 2d —, 2009 WL 418073 (Ala. 2009)................................................. 10

*Ridgeway v. CSX Transp., Inc.*,
   723 So. 2d 600 (Ala. 1998)........................................................................ 11

*Russell Corp. v. Sullivan*,
   790 So. 2d 940 (Ala. 2001) ....................................................................... 7, 9

*Schwartzman v. Gen. Elec. Co.*,
   848 F. Supp. 942 (D.N.M. 1993) ............................................................... 18

*Stone Container Corp. v. Stapler*,
   83 So. 2d 283 (Ala. 1955)........................................................................... 8

*Thomas Learning Center, Inc. v. McGuirk*,
   766 So. 2d 161 (Ala. Civ. App. 1998) .................................................. 13, 15

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)** ........................................................................................................**Page(s)**

*Turner v. Westhampton Court, L.L.C.,*
    903 So. 2d 82 (Ala. 2004) .......................................................................... 16, 18

*W.C. Strickland v. Lambert,*
    109 So. 2d 664 (Ala. 1959) ................................................................................ 7

*Watts v. Fla. Int'l Univ.,*
    495 F.3d 1289 (11th Cir. 2007) ......................................................................... 4

**Statutes**

Ala. Code § 6-5-120 (2009) ............................................................................. 9, 10

Ala. Code § 6-5-121 (2009) ............................................................................... 7, 9

Ala. Code § 6-5-123 (2009) .................................................................................. 7

**Regulations**

40 C.F.R. § 370.1 .............................................................................................. 14

40 C.F.R. §§ 370.20-370.28 ............................................................................... 15

40 C.F.R. §§ 370.30-370.31 ............................................................................... 15

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 19

Fed. R. Civ. P. 11 ............................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 4

**Other Authorities**

5 C. Wright & A. Miller, Fed. Practice & Procedure § 1202 (3d ed. 2004) .................. 2

Restatement (Second) Torts § 520 (1977) .............................................................. 16

Defendant International Paper Company ("IP") respectfully submits this memorandum in support of its Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

In this putative class action, six named Plaintiffs purporting to represent three proposed classes have sued IP for allegedly exposing them to hazardous substances. Plaintiffs base their claims solely on the conclusory allegation that hazardous substances from IP's Pratville, Alabama paper mill (the "Mill") have been "released into the environment"—a phrase that Plaintiffs define as encompassing, "without limitation, releases into the atmosphere, releases into the waterways and watershed, and releases onto and into the soil." Compl. ¶ 1. These purported "releases" allegedly have affected each Plaintiff or his property in some unspecified way. *See id.* ¶ 19.

The Complaint's essentially limitless and conclusory allegations do not provide ***factual*** support for even the most fundamental questions in this type of tort suit: ***When*** did the purported releases from the Mill occur? What was the ***source*** of the alleged emission? Through ***what*** pathway—air, water, or otherwise—did emissions travel to impact Plaintiffs? In addition, although the Complaint does contain allegations about the substances allegedly emitted from the Mill at unspecified times and by unspecified means, the allegations are so broad they are meaningless. According to Plaintiffs, the substances allegedly "released" included common industrial products and byproducts such as "Particulate Matter," "Volatile Organic Compounds," and "Polycyclic Aromatic Hydrocarbons," *id.* ¶ 3, ***and*** every single substance identified in 10 separate regulatory listings of chemicals and wastes, *id.* ¶ 2. This shotgun style of pleading does not come close to providing a "'statement of circumstances, occurrences, and events in support of the claim presented,'" as necessary to satisfy Rule 8(a)'s pleading requirements. *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1202, at 94, 95 (3d ed. 2004)).

Similarly, the Complaint provides virtually no information about the named Plaintiffs. It refers to the six named Plaintiffs individually only once—in the caption, where they are identified by which of three putative classes they seek to represent. The three classes are:

- Class A, which is defined as "all persons who ***own Property*** located within two (2) miles of the Facility and whose Property was therefore ***contaminated and damaged*** by the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility," Compl. ¶ 20.A (emphases added);

- Class B, which is defined as "all persons who have ***resided within two (2) miles*** of the Facility, who were therefore ***exposed*** to the Hazardous Substances released into the environment from the Facility, and who ***have been diagnosed*** with serious, disabling, and life-threatening diseases and health conditions known to be caused by exposure to the Hazardous Substances," *id.* ¶ 20.B (emphases added); and

- Class C, which is defined as "all persons who have ***resided within five (5) miles*** of the Facility, who were therefore ***exposed*** to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility, and who have therefore ***experienced the smell*** of the Noxious Odors which have caused harm to the Plaintiffs," *id.* ¶ 20.C (emphases added).

The Complaint does not describe the types of damages the six named Plaintiffs allegedly sustained, or when they sustained them. For example, it does not hint at the contamination or property damage allegedly sustained by Mr. Benefield and Ms. Scott (or how or when it occurred); the serious, disabling and life-threatening diseases allegedly affecting Mr. Edwards

and Ms. Slayton (or how or when they were contracted or diagnosed); or the injuries Ms. Abbott and Mr. Johnson allegedly experienced from the smell of noxious odors (or when their olfactory sensibilities began to be offended). Moreover, the absence of factual allegations about the six Plaintiffs creates internal inconsistencies between the causes of action asserted and the proposed classes with which the named Plaintiffs are associated. For example, all six Plaintiffs appear to allege personal injuries, *see, e.g., id.* ¶ 38, but Mr. Benefield and Ms. Scott "individually and on behalf of others similarly situated, being the members of Proposed Class A," appear to assert only claims for "Property [that was allegedly] contaminated and damaged" by IP. *Id.* ¶ 20.A. "[W]ithout some further factual enhancement" to fill in the missing details and properly delineate the allegations so that IP has fair notice, Plaintiffs' Complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

The paucity of factual allegations in Plaintiffs' Complaint suggests that, at bottom, this case amounts to a fishing expedition. Indeed, the prayer for relief goes so far as to request that IP conduct an investigation to "determine the degree" to which any substances from the Mill have actually affected any of the Plaintiffs. Compl. at 29. That goal is improper under the Federal Rules, which forbid "plaintiff[s] with a largely groundless claim" from being "allowed to take up the time of a number of other people" while they search to identify the bases, if any, for their claims. *Twombly*, 550 U.S. at 557-58. Because Plaintiffs' Complaint lacks factual allegations and is instead dominated by unsupported legal conclusions, it fails to provide proper notice to IP. Plaintiffs' entire Complaint should be dismissed for failing to state a claim upon which relief may be granted, and Plaintiffs' causes of action for public nuisance, private nuisance, negligence per se, and abnormally dangerous activity should be dismissed with

3

prejudice because, as discussed below, Plaintiffs cannot state a viable claim for these causes of action under Alabama law.

## II.    ARGUMENT

### A.    Legal Standard.

When evaluating a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), "the pleadings are construed broadly" and "the allegations in the complaint are viewed in the light most favorable to the plaintiff." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (internal quotation marks omitted).  Nonetheless, a plaintiff must provide more than a "'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  The allegations must provide "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" for each cause of action, *Watts*, 495 F.3d at 1296 (quoting *Twombly*, 550 U.S. at 555), and the Court is not "'bound to accept as true a legal conclusion couched as a factual allegation,'" *Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1371 (N.D. Ala. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

At this stage in the proceedings, the Court must focus on "whether the challenged pleadings give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Abrams v. Ciba Specialty Chems. Corp.*, No. 08-0068-WS-B, 2008 WL 4183344, at *5 n.10 (S.D. Ala. Sept. 10, 2008) (internal quotation marks omitted).  For the reasons explained below, Plaintiffs cannot satisfy their pleading burden as to any of their claims—let alone the heightened pleading burden applicable to their fraudulent suppression claim.

**B.     The Trespass Claim (Count I) Should Be Dismissed Because Plaintiffs Do Not Allege Exclusive Possession Or Substantial Damage To Their Land.**

Plaintiffs claim that IP's "release of Hazardous Substances, Particulate Matter, and Noxious Odors into the environment resulted in the contamination of Plaintiffs' Property and constituted a continuous trespass" on their properties.  Compl. ¶ 45.[1]  Under Alabama law, such a situation, if alleged sufficiently, would be considered an indirect trespass.  *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529–30 (Ala. 1979) (explaining the difference between nuisance and indirect trespass and categorizing emissions from the defendant's smoke stack as an indirect trespass).  The elements of an indirect trespass are:  (1) an invasion affecting an interest in the ***exclusive possession*** of the plaintiff's property; (2) an intentional doing of an act that results in the invasion; (3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and (4) ***substantial damage*** to the land.  *Id.*  Plaintiffs, however, have not pled facts that, if true, would establish either an exclusive possessory interest in their properties or substantial damage to the land.  For these reasons, the claim must be dismissed.

The Complaint does not adequately allege the necessary exclusive possession of land.  According to the class definitions—which supply the only information about the named Plaintiffs—Mr. Benefield and Ms. Scott own property located within two miles of the Mill.  Compl. ¶ 20.A.  This allegation, however, does not indicate an exclusive possessory interest.  If,

---

[1]    All of the causes of action asserted in the Complaint are asserted on behalf of "Plaintiffs." Because the Complaint does not define "Plaintiffs," IP interprets that term to mean all six Plaintiffs named in the case caption, even though reading the Complaint to assert each cause of action on behalf of each named Plaintiff leads to tension with the descriptions of the three proposed classes.  For example, as "Plaintiffs" Mr. Edwards and Ms. Slayton assert a trespass claim, but Class B—which the caption identifies Mr. Edwards and Ms. Slayton as representing individually and on behalf of a putative class—is defined as individuals who assert personal injury claims, not property damage claims.  Compl. ¶ 20.B.

for example, Ms. Scott and Mr. Benefield never resided at their properties, but instead rented the properties to others, they could not assert a trespass claim. In such a situation, landlords "have no right to possession of the property, and trespass is a wrong relating to the right of possession." *AmSouth Bank, N.A. v. City of Mobile*, 500 So. 2d 1072, 1075 (Ala. 1986) (finding that landlords had no standing to assert a trespass claim); *Lacey v. Morris*, 110 So. 379, 380 (Ala. 1926) ("landlord who has granted this possession to a tenant for a definite term has no immediate right of possession and cannot maintain the [trespass] action during such term").

The Complaint also fails to allege that the six named Plaintiffs sustained substantial damage to the land. According to the definition of Class C, which Ms. Abbott and Mr. Johnson represent, any cause of action asserted by these two plaintiffs necessarily arises from "the smell of noxious odors." Compl. ¶ 20.C. Noxious odors, however, cannot give rise to a trespass claim because they involve no actual damage to property. *See Borland*, 369 So. 2d at 529-30. Ms. Abbott and Mr. Johnson, therefore, have no viable trespass claim.

Moreover, the remaining four Plaintiffs have also failed adequately to allege damage. The requirement that plaintiffs plead substantial damage is important because "there is a point where the entry is so lacking in substance that the law will refuse to recognize it, applying the maxim De minimis non curat lex the law does not concern itself with trifles." *Borland*, 369 So. 2d at 529. Here, Plaintiffs summarily allege that their properties have been "contaminated," Compl. ¶ 36, but they provide no explanation or example of what they mean by "contaminated" or how such contamination resulted in substantial damage to their land. Indeed, Plaintiffs fail to make even the ***general*** allegation that they suffered "substantial damage"—a notable omission that may be explained by the inability to make such an allegation consistent with the obligations of Federal Rule of Civil Procedure 11.

For these reasons, Plaintiffs' trespass claim should be dismissed unless and until each Plaintiff can allege facts supporting an exclusive possessory interest in land and substantial damage to land.

**C.    The Public Nuisance Claim (Count II) Should Be Dismissed Because Plaintiffs Lack Standing And Have Not Alleged Injury.**

Plaintiffs' public nuisance claim must be dismissed for two independent reasons. First, Plaintiffs have not alleged the special damage required for individuals to bring a public nuisance claim. Second, even if Plaintiffs have standing, they have not alleged an injury sufficient to constitute a nuisance.

### 1.    Plaintiffs Do Not Have Standing To Assert A Public Nuisance Claim.

"Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state." Ala. Code § 6-5-121 (2009). An individual may have a cause of action under a public nuisance theory only if that individual suffered a ***special damage*** in which the public does not participate. Ala. Code § 6-5-123 (2009). Plaintiffs' Complaint not only fails to plead special damage, but conclusively demonstrates that Plaintiffs lack standing to assert a public nuisance claim.

To qualify as "special damage" for standing purposes, the nuisance must cause damage that is different "in kind and degree from the damage suffered by the public in general." *Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001).[2] Plaintiffs provide no factual allegations,

---

[2]    In those few instances where an individual has alleged the necessary special damage to pursue a public nuisance claim, the complaint has been brought on behalf of a small number of individuals and provided specific facts describing plaintiffs' unique injuries and their distance from the alleged polluter. *See, e.g.*, *W.C. Strickland v. Lambert*, 109 So. 2d 664, 665–66 (Ala. 1959) (One plaintiff alleged that the defendant was located across the street from his residence and that "the odors became so strong that it became impossible for the [plaintiff] and his family to properly enjoy their meals, and they had periods of nausea and sickness due to said odors."); *Stone Container Corp. v. Stapler*, 83

however, explaining how their injuries differ from those of the public in general.  Instead, Plaintiffs make the bald legal assertion that their damages are "unique" due to their "unique, close proximity to the Facility," and they are therefore entitled to relief.  Compl. ¶¶ 58, 59.  But Plaintiffs wholly fail to allege any facts that would support such a conclusion.  To the contrary, Plaintiffs allege that "the ***entire Prattville community***, including the Plaintiffs, has suffered and continues to suffer injury" as a consequence of the nuisance.  *Id.* ¶ 60 (emphasis added).

Moreover, the Complaint defines Class C as "all persons who have resided within five (5) miles of the Facility . . . who have therefore experienced the smell of the Noxious Odors which have caused harm to the Plaintiffs."  *Id.* ¶ 20.C.  If all individuals within a five mile radius of the Mill allegedly have been affected by the Mill's nuisance, Plaintiffs cannot credibly claim "unique proximity" to the Mill.  In short, Plaintiffs offer no explanation (nor could they) as to how their alleged injuries differ in "kind and degree" from the community at large.[3]  The public nuisance claim should, therefore, be dismissed with prejudice.

## 2.    Plaintiffs Have Not Alleged Injury.

To state a nuisance claim, "[t]he inconvenience complained of must not be fanciful or such as would affect only one of fastidious taste, but it should be such as would affect an

---

So.2d 283, 284–86 (Ala. 1955) (31 plaintiffs owned properties in a certain subdivision within the city and alleged that mosquitoes would "invade the atmosphere over the property . . . and bite and annoy complainants, members of their families and their guests," and also that flooding from the creek would leave "large sheets of pulp waste" on their properties).

[3]  In addition, Plaintiffs' attorneys filed a mass tort action based on the same actions alleged against IP in this matter.  *See* Compl., *Brantley v. Int'l Paper Co.*, 2:09-cv-230-WHA (M.D. Ala. Mar. 20, 2009).  That complaint contains the exact same public nuisance cause of action.  The more than 300 plaintiffs in that action are located throughout "the City of Prattville and the surrounding area," *Brantley*, Compl. ¶ 13, which reinforces the conclusion that Plaintiffs in this matter have no special damages that would differentiate them from the general public.

ordinary reasonable man." Ala. Code § 6-5-120 (2009); *Russell Corp.*, 790 So. 2d at 951.

Plaintiffs' nuisance allegations shed no light on the nature and extent of the nuisance. Plaintiffs

summarily assert that they "have suffered and continue to suffer injuries" due to the emissions.

Compl. ¶ 59. But such an allegation tells the Court and Defendant nothing about how any of the

six named Plaintiffs has been affected. The Complaint provides no factual allegations describing

how even one of them incurred an inconvenience that would affect an "ordinary reasonable

man."

**D.    The Private Nuisance Claim (Count III) Also Fails As A Matter Of Law And
        Should Be Dismissed.**

Plaintiffs' private nuisance cause of action fails for two reasons. First, private nuisances

are those that affect only "one or a few individuals," not three classes of Plaintiffs, as alleged in

this case. Ala. Code § 6-5-121. Second, Plaintiffs have not alleged sufficient injury to state a

private nuisance claim.

The Alabama statute defining a private nuisance is limited specifically to "one limited in

its injurious effects to *one or a few* individuals." Ala. Code § 6-5-121 (emphasis added).

Plaintiffs allege that all six putative class representatives and thus the ***three classes of people***

they represent (one of which includes all individuals within a five mile radius of the Mill) have

suffered a private nuisance—hardly a claim that is limited to one or a few individuals. Indeed,

the Alabama Supreme Court has denied private nuisance clams when it appeared that an entire

area was affected by a claimed nuisance. For example, in *Ellis v. Alabama Power Co.*, the

plaintiffs alleged that the defendant caused a private nuisance when it allowed its reservoir to

overflow and cause flooding onto plaintiffs' properties. 431 So. 2d 1242, 1244–45 (Ala. 1983).

The Court stated, "It was undisputed that essentially all the property owners located on [the

reservoir] were flooded. . . . Accordingly, we agree with the trial court that plaintiffs' count for

private nuisance is barred by Code of 1975 § 6-5-121." *Id.* at 1244.  Plaintiffs' private nuisance claim should be dismissed with prejudice.[4]

In addition, Plaintiffs have not alleged an injury sufficient to support a private nuisance claim.  As explained above under Public Nuisance, Plaintiffs make only conclusory allegations with regard to the injuries they sustained and they offer no support as to how they were inconvenienced or why the alleged emissions would affect a "reasonable man."  Ala. Code § 6-5-120.  Moreover, for private nuisance, Alabama courts have held that "the interference that resulted and the physical harm, if any, from that interference must be ***substantial***" and "that the interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land."  *Park Center, Inc. v. Champion Int'l Corp.*, 804 F. Supp. 294, 302 (S.D. Ala. 1992) (emphasis added).  The Complaint offers not even the most basic allegation for any of the six named Plaintiffs that the alleged interference was "substantial" or "unreasonable."  Because Plaintiffs do not satisfy the requirements for a private nuisance, their cause of action must be dismissed.

**E.     Plaintiffs' Claims For Negligence (Count IV) And Wantonness (Count V) Must Be Dismissed Because Plaintiffs Do Not Adequately Plead Facts Showing A Breach Of Duty Or Damages.**

To properly plead claims for negligence and wantonness under Alabama law, Plaintiffs must allege, *inter alia*, that IP breached a duty and that IP's breach caused damages.  *Prill v. Marrone*, — So. 2d —, 2009 WL 418073, at *4 (Ala. 2009) (negligence); *Ridgeway v. CSX*

---

[4]     A nuisance claim, if one exists, could be initiated by the municipality as a public nuisance, as described above, but not by these plaintiffs.  Other, similar complaints alleging nuisance by contaminants and noxious odors have been brought by municipalities in Alabama as a public nuisance.  *See, e.g.*, *Duncan v. City of Tuscaloosa*, 60 So. 2d 438, 439 (Ala. 1952) (alleging public nuisance by a chicken business); *Nat'l S. Prods. Corp., Inc. v. City of Tuscaloosa*, 20 So. 2d 329 (Ala. 1944) (bringing a public nuisance claim against a chemical manufacturing company).

*Transp., Inc.*, 723 So. 2d 600, 608 (Ala. 1998) (wantonness). Though Plaintiffs' Complaint

contains conclusory assertions touching on these elements, it is devoid of ***factual*** allegations

sufficient to establish either of them. Because binding precedent requires the latter, Plaintiffs'

claims for negligence and wantonness should be dismissed.

First, the Complaint does not adequately allege a breach of duty. To the extent Plaintiffs

argue that the alleged "release[s] into the environment" from IP's paper mill constituted breaches

of a duty, *see* Compl. ¶ 1, those allegations are insufficient to support Plaintiffs' claims because

they do not give IP "'fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). These vague

allegations are essentially limitless—they purport to encompass every possible "release" from

the Mill, but provide no information about the source of the alleged release or when in the

decades-long history of the Mill it occurred. *See* Compl. ¶ 1 ("For the purposes of this Class

Action Complaint, the phrase 'released into the environment' shall include, without limitation,

releases into the atmosphere, releases into the waterways and watershed, and releases onto and

into the soil.") Such vague and open-ended allegations do not "raise" Plaintiffs' "right to relief

above the speculative level." *Twombly*, 550 U.S. at 555.

Second, the factual allegations in the Complaint do not give IP "fair notice," *id.*, of the

damages that have purportedly been incurred by Plaintiffs as a result of the alleged "release[s]."

The Complaint names six persons as putative class representatives but provides no information

about the injuries or damages that any of the six Plaintiffs claims to have suffered. Instead, it

pronounces in sweeping terms that the purported releases "have, in fact, directly and proximately

caused, promoted, and accelerated cancer, caused birth defects, and caused other serious,

disabling, and life-threatening diseases and health conditions in Plaintiffs," Compl. ¶ 35, and

11

"directly and proximately cause[d] damage to Property in the community surrounding the" Mill, *id.* ¶ 37. Similar to these allegations are the broad claims that the alleged releases "directly and proximately caused Plaintiffs to suffer damages, including, without limitation: A. Serious, disabling, and life-threatening diseases and health conditions. B. Emotional injuries, including pain and suffering. C. Loss of wages. D. Medical expenses. E. Future medical expenses. F. Loss of enjoyment of life." *Id.* ¶ 38.

The Complaint contains ***no allegations*** describing ***a single Plaintiff's*** disability, or "medical expenses" incurred to treat the purported disabilities.[5] Similarly, the supposed "property damages" alleged in Paragraph 37 do not suffice both because that allegation is vague and conclusory and because the Complaint itself indicates that four of the six named Plaintiffs— Mr. Edwards, Ms. Slayton, Ms. Abbott and Mr. Johnson—may not own any property. The classes represented by these four individuals, Class B and Class C, are defined as including only "persons who have resided" within two or five miles of the Mill. Compl. ¶ 20.B.-C. The definitions say nothing about whether these four Plaintiffs owned property. Because the Complaint does not give fair notice to IP of the alleged breaches or the putative class representatives' purported damages, Plaintiffs' negligence and wantonness claims should be dismissed. *Twombly*, 550 U.S. at 555.

---

[5]  The tension between the putative classes described in note 1 *supra* also pervades the allegations supporting these claims. For example, the allegation in paragraph 38 of the Complaint that "Plaintiffs" suffered "serious, disabling, and life-threatening diseases and health conditions" cannot be squared with Mr. Benefield's and Ms. Scott's association "individually" with Proposed Class A, which is defined to include only those who have allegedly experienced ***property*** damages, not personal injuries, *see* Compl. ¶ 20.A.

**F.    Plaintiffs' Allegations Do Not Support A Claim For Negligence Per Se (Count VI).**

To state a claim for negligence per se under Alabama law, a plaintiff must plead facts establishing four elements:  "'(1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury.'"  *Cook's Pest Control, Inc. v. Rebar*, — So. 2d —, 2009 WL 418074, at *8 (Ala. 2009) (quoting *Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003)).  Here, Plaintiffs' allegations do not establish the first or third elements of a negligence per se claim.

To satisfy the first element of a negligence per se claim, a plaintiff must show that the statute the defendant allegedly has violated protects a "class of persons" distinct from—i.e., narrower than—the general public.  *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) (citing *Thomas Learning Center, Inc. v. McGuirk*, 766 So. 2d 161, 171 (Ala. Civ. App. 1998)).  Whether a statute protects a "class of persons" distinguishable from the general public is determined by giving "the words used in the" statute "their plain, ordinary, and commonly understood meaning and" interpreting "the language to mean what it says."  *Id*.

The only statute that Plaintiffs specifically invoke in their negligence per se count is "The Emergency Planning Community Right to Know Act, 42 U.S.C. §§ 11001, *et seq*. (1986), as amended, as described in 40 CFR Part 370."  Compl. ¶ 89.[6]  The "Purpose" section of 40 C.F.R. Part 370 states that "[t]hese regulations establish reporting requirements which ***provide the***

---

[6]    Given the showing required by *Parker Building*, Plaintiffs cannot satisfy their pleading obligation merely by alleging that IP violated "all of the other laws described above."  Compl. ¶ 89.  Such a generic and open-ended assertion falls well short of identifying a statute that was passed for the benefit of a distinct class of persons.

13

*public* with important information on the hazardous chemicals in their communities for the purpose of enhancing *community awareness* of chemical hazards and facilitating development of State and local emergency response plans." 40 C.F.R. § 370.1 (emphases added). The "plain, ordinary, and commonly understood meaning" of the emphasized language, *Parker Building*, 925 So. 2d at 931, establishes that the regulations in 40 C.F.R. Part 370 are designed to benefit "the public" by providing information to enhance "community awareness." These terms demonstrate that 40 C.F.R. Part 370 is intended to protect and benefit the general public, not a distinct, narrower class of persons. *See Parker Bldg.*, 925 So. 2d at 931.

The Alabama Supreme Court's holding in *Parker Building* buttresses the conclusion that 40 C.F.R. Part 370 was designed to benefit the general public and therefore cannot support a negligence per se claim. In *Parker Building*, the court held that Section 101.2.1 of the Alabama Building Code was adopted "to protect the general public." 925 So. 2d at 932. The code provision at issue provided:

> This Code is hereby declared to be remedial, and shall be construed to secure the beneficial interests and purposes thereof—which are *public safety, health, and general welfare* through structural strength, stability, sanitation, adequate light and ventilation, and *safety to life and property* from fire and other hazards attributed to the built environment including alteration, repair, removal, demolition, use and occupancy of buildings, structures, or premises, and by regulating the installation and maintenance of all electrical, gas, mechanical and plumbing systems, which may be referred to as service systems.

*Id.* at 931 (emphasis added). Analyzing this language, the Alabama Supreme Court stated that "[t]he purposes to be served by the Building Code of 'public safety, health, and general welfare' refer to the *public generally*," and "the phrase 'safety to life and property' in section 101.2.1" referred "to the *general public*, and not to a particular subset of persons who may be in a building at a particular time." *Id.* at 932 (emphasis added). Because the Building Code thus protected the general public rather than a distinct "class of persons," the "first element of the

doctrine of negligence per se [wa]s not met," a holding fatal to the plaintiffs' claim for

negligence per se.  *Id.*; *see also Thomas Learning*, 766 So. 2d at 171–72 (holding that the phrase

"in order to safeguard life, health, and property, and to promote the general public welfare," in

Ala. Code § 34-8-20 referred to the public generally, not to a distinct class of persons).

The text of 40 C.F.R. § 370.1 is highly similar to the statutory language at issue in *Parker*

*Building* and *Thomas Learning*.  All three provisions expressly refer to the "public."  In addition,

the provisions in *Parker Building* and *Thomas Learning* concerned the "public welfare" and

"general welfare," and the language of 40 C.F.R. § 370.1 aims to further the related goal of

"community awareness."  These overlapping terms show that 40 C.F.R. § 370.1, like the

provisions in *Parker Building* and *Thomas Learning*, benefits the general public.  This Court

should so hold, and therefore conclude that Plaintiffs cannot, as a matter of law, establish the

first element of a negligence per se claim.

The Plaintiffs' allegations also fail to establish the third element of a negligence per se

claim—that IP actually violated 40 C.F.R. Part 370.  These regulations require certain industrial

facilities to report the identity and quantities of various substances present on their sites, *see*

40 C.F.R. §§ 370.20-370.28, and to make that information available to others upon request, *see*

*id.* §§ 370.30-370.31.  Plaintiffs' Complaint, however, is bereft of any ***factual*** allegations (as

distinct from conclusory assertions) that IP breached any applicable reporting or disclosure

requirements imposed by these regulations.

Plaintiffs' failure to plead such facts is reminiscent of a similar failing by the plaintiffs in

*Cook's Pest Control*, a recent Alabama Supreme Court decision.  In *Cook's*, the court held that

the trial court erred by refusing to grant a defendant's motion for judgment as a matter of law on

plaintiffs' claim for negligence per se.  — So. 2d —, 2009 WL 418074, at *8.  The defendant

15

asserted an objection that plaintiffs had failed to "identify any specific provisions of" the allegedly applicable regulation "that were violated." *Id.* Plaintiffs' failing here is similar—they have not "identif[ied] any specific provision" of 40 C.F.R. Part 370 that IP has allegedly violated, *id.*, and they have not alleged facts sufficient to establish "above the speculative level" that IP violated the reporting and disclosure requirements of 40 C.F.R. Part 370, *Twombly*, 550 U.S. at 555. Thus, under *Cook's Pest Control*, Plaintiffs' allegations fail to satisfy the third element of a claim for negligence per se. Plaintiffs' negligence per se claim based on the Emergency Planning Community Right To Know Act should be dismissed with prejudice.

## G.    Plaintiffs Do Not Allege Facts Establishing That Running A Paper Mill Is An Abnormally Dangerous Activity (Count VII).

Plaintiffs seek to hold IP liable for purportedly engaging in an abnormally dangerous activity. *See* Compl. ¶¶ 94-99. Under Alabama law, courts must consider the following six factors when "determining whether an activity is abnormally dangerous":

> (a)  evidence of a high degree of risk of some harm to the person, land or chattels of others;
> (b)  likelihood that the harm that results from it will be great;
> (c)  inability to eliminate the risk by the exercise of reasonable care;
> (d)  extent to which the activity is not a manner of common usage;
> (e)  inappropriateness of the activity to the place where it is to be carried on; and
> (f)  extent to which its value to the community is outweighed by its dangerous attributes.

*Turner v. Westhampton Court, L.L.C.*, 903 So. 2d 82, 89-90 (Ala. 2004) (quoting Restatement (Second) Torts § 520 (1977)) (other internal quotation marks omitted).

These factors establish a high threshold for imposing tort liability under the abnormally dangerous activity doctrine. They create a "general rule" that "an activity is not abnormally dangerous, such that the imposition of strict liability is warranted, unless it is an activity 'which cannot be performed safely even in the absence of negligence and with the exercise of all reasonable care.'" *E S Robbins Corp. v. Eastman Chem. Co.*, 912 F. Supp. 1476, 1489 (N.D.

16

Ala. 1995) (quoting *Clark v. Container Corp. of Am., Inc.*, 936 F.2d 1220, 1225 (11th Cir.

1991)). In other words, "the fact that activities pose some risk of harm either to the environment

or to humans does not mean that the activities are abnormally dangerous." *Id.* For this reason, in

Alabama, the doctrine of abnormally dangerous activity "has been limited primarily to blasting

cases," *id.*, though the Alabama Supreme Court has also permitted narrow extensions of this

doctrine to "the aerial spraying of pesticides and insecticides" and to applying "a highly caustic

chemical" to remove paint in an area where persons were present, *Fike v. Peace*, 964 So. 2d 651,

660 (Ala. 2007).

Plaintiffs do not allege any of the three types of conduct that the Alabama Supreme Court

has accepted as a basis for an abnormally dangerous activity. Moreover, Plaintiffs' allegations

do not come close to establishing that operating a paper mill constitutes an abnormally dangerous

activity resembling blasting with dynamite, the aerial spraying of pesticides and insecticides, or

using a highly caustic chemical to remove paint. Plaintiffs nowhere allege facts (nor could they)

that would show that operating a paper mill—which has occurred for decades throughout the

United States—is an activity that cannot "be performed safely . . . in the absence of negligence

and with the exercise of all reasonable care." *E S Robbins*, 912 F. Supp. at 1489.

This conclusion comports with applicable precedent. In *Fike*, for example, the Alabama

Supreme Court held that "the shipping of an oversized load" by a tractor-trailer was not an

abnormally dangerous activity because "[t]here is nothing to suggest that if the proper

precautions are in fact taken in regard to [the shipping of an oversized load], that this activity is

hopelessly fraught with danger, no matter how skillfully or carefully it is performed." 964 So.

2d at 660-61 (internal quotation marks omitted) (second brackets in original). Similarly, in

*Turner*, the Alabama Supreme Court concluded that applying synthetic stucco used in home

17

construction to a new home's exterior was not an abnormally dangerous activity.  903 So. 2d at

85, 89–90.  And in *E S Robbins*, the court concluded that "as a matter of law, the transportation

and delivery of" certain chemicals used in manufacturing vinyl products "does not constitute an

abnormally dangerous activity" because there was no "evidence indicating that the chemical

product *cannot* be transported and off-loaded safely."  912 F. Supp. at 1489.[7]

The reasoning in these cases applies with equal force here, and compels the same

conclusion.  "There is nothing to suggest that if the proper precautions are in fact taken in regard

to [operating a paper mill], that this activity is hopelessly fraught with danger, no matter how

skillfully or carefully it is performed."  *Fike*, 964 So. 2d at 660-61 (internal quotation marks

omitted).  The allegations in Plaintiffs' Complaint do not establish that operating a paper mill

"***cannot*** be" done safely.  *E S Robbins*, 912 F. Supp. at 1489 (emphasis added).  To the contrary,

Plaintiffs elsewhere appear to allege that IP failed to operate the Mill in compliance with the

statues and regulations designed to ensure Plaintiffs' safety.  *See, e.g.*, Compl. ¶ 27.

Accordingly, IP cannot be liable as a matter of law for conducting an abnormally dangerous

activity, and this claim should be dismissed with prejudice.

---

[7]   Numerous courts have held that merely using the types of chemicals listed in the
complaint does not amount to an abnormally dangerous activity because such chemicals
can be used and disposed of safely.  *See, e.g.*, *In re Burbank Envt'l Litig.*, 42 F. Supp. 2d
976, 983 (C.D. Cal. 1998) ("Courts have held that risks associated with the use, storage
and/or disposal of industrial solvents such as TCE and PCE can be avoided through the
exercise of reasonable care. . . .  After considering the six criteria for ultrahazardous
activity, the Court concludes plaintiffs have not stated sufficient facts to establish the use
of TCE, PCE and hexavalent chromium is an ultrahazardous activity."); *Schwartzman v.
Gen. Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993) ("Although hazardous material and
petroleum products may present a substantial degree of risk to persons or property when
mishandled, I conclude that the risks can be eliminated through the exercise of reasonable
care.  Indeed, the premise of many environmental laws . . . is that the proper handling and
disposal of these materials minimizes or eliminates the risk of their use.").

**H.      The Fraudulent Suppression Claim (Count VIII) Must Be Dismissed.**

As with all of their causes of action, Plaintiffs' allegations regarding fraudulent

suppression are vague and insufficient.  They do not satisfy Plaintiffs' basic pleading burden, and

they fall well short of the heightened pleading burden under Federal Rule of Civil Procedure

9(b).  In addition, the Complaint fails to allege the requisite elements of fraudulent suppression

under Alabama law.

**1.      Plaintiffs Fail To Satisfy Their Heightened Pleading Burden.**

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Alabama courts have made clear that claims

for fraudulent suppression are subject to this heightened standard.  *See, e.g., Peters v. Amoco Oil*

*Co.*, 57 F. Supp. 2d 1268, 1279–81 (M.D. Ala. 1999).  To satisfy the Rule 9(b) standard, the

complaint must set forth:

> (1)  precisely what statements were made in what documents or oral
> representations or what omissions were made, and
> (2)  the time and place of each such statement and the person responsible for
> making (or, in the case of omissions, not making) same, and
> (3)  the content of such statements and the manner in which they misled the
> plaintiff, and
> (4)  what Defendants obtained as a consequence of the fraud.

*Id.* at 1280 (internal quotation marks omitted).  Although the Complaint provides no detail

regarding any of these elements, it is particularly devoid of details about what, precisely, the

omissions were, when they occurred, and how they misled Plaintiffs.

The Complaint generally alleges that IP failed to "warn and advise Plaintiffs . . . of the

dangers caused by the release[s];" failed to provide Plaintiffs "with knowledge as to what would

be a reasonable, safe and sufficient protection . . . to safeguard Plaintiffs" from injuries; and

failed to "disclose that IP was releasing Hazardous Substances, Particulate Matter, and Noxious

Odors" from the facility.  Compl. ¶¶ 103.A.–C.  These allegations are generic, and as discussed

19

*infra*, do not satisfy even notice pleading standards as to the purported nature of the alleged "releases." Such general assertions certainly do not provide the particularity required by Rule 9(b) as to "precisely" what omissions were made by IP.

Moreover, Plaintiffs provide absolutely no indication of when any alleged omissions occurred, let alone "the time and place of each such" omission. In fact, the Complaint provides **no timeframe whatsoever** for any of the causes of action—it is utterly silent as to when any of the alleged events happened. Such vagueness should not be accepted for any claim, but it is plainly insufficient to satisfy Rule 9(b).

Plaintiffs also fail to allege "the manner in which [the purported omissions] misled the plaintiff." *Peters*, 57 F. Supp. 2d at 1280. The Complaint generically asserts that due to IP's alleged omissions, Plaintiffs were prevented from "fully evaluating and understanding the situation and delayed [their] assertion of their legal rights." Compl. ¶ 42. That assertion is insufficient to satisfy the particularity required by Rule 9(b). Moreover, that assertion is contradicted by Plaintiffs' repeated allegations that they were impacted by noxious odors and particulate matter. *See, e.g.*, *id.* ¶¶ 18, 36, 38, 57. Being aware of odors and particulate matter, Plaintiffs had ample opportunity to test their air, water and soil to determine what hazardous substances, if any, were affecting them. Indeed, Plaintiffs themselves allege that "[t]he hazardous substances . . . released from the Facility . . . have **long been known** to cause significant and adverse health effects in both humans and animals." *Id.* ¶ 8 (emphasis added). Thus, far from providing details about how IP misled them, Plaintiffs' own allegations indicate that IP could not have misled them.

Such vague and conclusory statements are contrary to the purpose of Rule 9(b). The rule ensures that Defendants are alerted to the specifics of their allegedly fraudulent behavior at an

early stage to enable them to defend themselves effectively and to discourage baseless accusations.  This Complaint does not satisfy the rule, and the fraudulent suppression claim should be dismissed.

**2.    Plaintiffs Fail To State A Fraudulent Suppression Claim Under Alabama Law.**

To plead a cause of action for fraudulent suppression in Alabama, Plaintiffs must allege:

(1) that the defendant had a duty to disclose an existing material fact;
(2) that the defendant suppressed that existing material fact;
(3) that the defendant had actual knowledge of the fact;
(4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and
(5) that the plaintiff suffered actual damage as a proximate result of acting or not acting.

*Ex Parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999).  Plaintiffs fail to allege, *inter alia,* that IP's suppression induced ***any*** of the six named Plaintiffs to act or refrain from acting. And, as discussed above, given Plaintiffs' allegations about noxious odors, a shotgun assertion of inducement should be rejected as inconsistent with the logical consequence of Plaintiffs' other allegations.

Moreover, Plaintiffs provide no discussion of any actual damage they suffered as a result of "not acting."  Plaintiffs assert that they were prevented from "fully evaluating and understanding the situation and delayed [their] assertion of their legal rights."  Compl. ¶ 42.  But they have said nothing about damages sustained by any of them as a result of delaying the "assertion of their legal rights."  For these reasons, Plaintiffs' fraudulent suppression cause of action must be dismissed.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs' causes of action for public nuisance, private nuisance, negligence per se, and abnormally dangerous activity should be dismissed with

prejudice.  All of Plaintiffs' causes of action should be dismissed for failure to allege facts

sufficient to support an entitlement to relief.

Dated:  May 15, 2009                            Respectfully submitted,

                                                /s/ *Sandy G. Robinson*_____
                                                **SANDY G. ROBINSON – ROBIS5756**
                                                Attorney for Defendant
                                                International Paper Company

OF COUNSEL:

CABANISS, JOHNSTON, GARDNER,
  DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama  36652
Telephone:  (251) 415-7308
Facsimile:  (251) 415-7350
Email: sgr@cabaniss.com

Daniel W. Nelson*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC  20036
Telephone:  (202) 887-3687
Facsimile:  (202) 530-9571
Email:  dnelson@gibsondunn.com
*Admitted Pro Hac Vice*

Patrick W. Dennis*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
46th Floor
Los Angeles, CA  90071
Telephone:  (213) 229-7567
Facsimile:  (213) 229-6567
Email:  pdennis@gibsondunn.com
*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May, 2009, I electronically filed the foregoing **Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint** with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Robert Leslie Palmer
Bob@elglaw.com
Gregory A. Cade
gregc@elglaw.com
Hoyt Gregory Harp
gharp@elglaw.com

J. Edward Bell, III
ebell@edbelllaw.com
J. Ryan Heiskell
rheiskell@edbelllaw.com

Walter G. Watkins, III
trey@fpwk.com
Casey Lampkin Butts
ButtsCL@fpwk.com

and by placing same in the United States mail, properly addressed and first class to the following:

Walter Garner Watkins, Jr., Esquire
Forman Perry Watkins
 Krutz & Tardy LLP
Post Office Box 22608
Jackson, MS 39225-2608

/s/ *Sandy G. Robinson*
OF COUNSEL