IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES K. BENEFIELD and CAROLYN SUE SCOTT, etc., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL ACTION NO. 2:09cv232-WHA ) ) (WO) |
| INTERNATIONAL PAPER CO., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on a Rule 12(b)(6) Motion to Dismiss filed by the Defendant on May 15, 2009) (Doc. #36). This case is a putative class action comprised of three separate proposed classes which assert state law claims against International Paper ("IP"). These claims include claims for trespass (Count I), public nuisance (Count II), private nuisance (Count III), negligence (Count IV), wantonness (Count V), negligence per se (Count VI), engaging in an abnormally dangerous activity (Count VII), and fraudulent suppression (Count VIII).

For reasons to be discussed, the Motion to Dismiss is due to be denied in part and granted in part, and some claims dismissed without prejudice to being re-pled.

**II. MOTION TO DISMISS**

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The complaint must

contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

### III.  FACTS

A summary of the allegations of the Plaintiffs' Complaint is as follows:

The Plaintiffs have asserted that the Defendant, International Paper ("IP" or "Defendant") has allowed dangerous chemicals to be emitted from a paper manufacturing  facility ("facility" or "mill") operated in Prattville, Alabama.   In the Complaint, the Plaintiffs identify "generally, without limitation" a list of hazardous substances which includes substances included in ten provisions of the Code of Federal Regulations.   The Plaintiffs also allege that IP has violated the Resource Conservation and Recovery Act, the Comprehensive Environmental Response Compensation and Liability Act, the Superfund Amendment and Reauthorization Act, the Emergency Planning Community Right to Know Act, the Occupational Safety and Health Administration Hazardous Waste Operations and Emergency Response Standard, the Clean Air and Water Acts, the Solid Waste Disposal Act, and various state laws and regulations.

The proposed classes are as follows:

Class A–all persons who own property located within two miles of the facility and whose property was therefore contaminated and damaged by hazardous substances, particulate matter, and noxious odors.

Class B–all persons who have resided within two miles of the facility who were exposed

to hazardous substances and have been diagnosed with serious, disabling, and life-threatening diseases.

Class C–all persons who have resided within five miles of the facility who were exposed to hazardous substances, particulate matter, and noxious odors and who have experienced the smell of the noxious odors which have caused harm to the Plaintiffs.

## IV. <u>DISCUSSION</u>

The Defendant has moved to dismiss the Plaintiffs' Complaint, arguing that the Complaint is too speculative to satisfy minimal pleading standards. In its reply to the Plaintiffs' response to its motion, the Defendant refines its argument, stating that the Plaintiffs' claims for public nuisance, private nuisance, negligence per se and abnormally dangerous activity should be dismissed with prejudice because the Plaintiffs cannot state a legally cognizable claim under state law, and that all other claims should be dismissed until the Plaintiffs can provide facts to support those claims. The court will begin with the claims the Defendant argues should be dismissed with prejudice, and then turn to the claims that the Defendant identifies as requiring dismissal to be re-pled.

### Motion to Dismiss with Prejudice

#### A. Public nuisance

The Plaintiffs allege that the air above the ground and the water below the ground are held by the State of Alabama in an irrevocable trust for the benefit of the public, and that the contamination of the air and water at the facility in the Prattville community is a public nuisance. The Plaintiffs state that they have standing to bring a public nuisance claim in Count II of the Complaint because of their close proximity to the facility, and their injuries. The Plaintiffs

allege in the Complaint that the entire Prattville community has suffered injury. Complaint at ¶ 60. They further allege that they have standing to pursue an action for public nuisance because of their "unique, close proximity to the Facility and because they have suffered and continue to suffer injuries." *Id.* at ¶ 59.

The Defendant cites *Alabama Code* § 6-5-121 for the proposition that a public nuisance does not give a right of action to any individual unless that individual has special damage in which the public does not participate. The Defendant states that the allegations of this case and the Complaint of the companion case, *Brantley v. IP*, 2:09cv230-WHA, that the entire Prattville community has suffered damage belie any position that these particular Plaintiffs have suffered special damage. The Defendant points specifically to the definition of proposed Class C, and state that if individuals within a five mile radius of the facility have suffered damages, the Plaintiffs cannot claim unique proximity to the facility.

The Plaintiffs respond in their brief that entire communities may bring a claim for a public nuisance because such a nuisance can cause many people to suffer special damages.

Alabama law on the distinction between public and private nuisance has been summarized as follows:

> Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured.
>
> In order for an individual to maintain an action to enjoin a public nuisance, the individual must have sustained a "special injury" which is different in degree and kind from the injury suffered by the public at large. *City of Birmingham v. City of Fairfield*, 375 So. 2d 438 (Ala. 1979); *Strickland v. Lambert*, 268 Ala. 580, 109 So. 2d 664 (1959). The individual has the burden to allege and to show this

special injury. *Ayers v. Stidham*, 260 Ala. 390, 71 So. 2d 95 (1954).

*Lower Commerce Ins., Inc. v. Halliday,* 636 So.2d 430, 431 (Ala. Civ. App. 1994).   This court cannot agree, based on this description of Alabama law, that damage to an entire community means that each member of that community has standing to bring a public nuisance claim. Alabama law is clear that if an entire community is affected, the nuisance is public, and only those persons who suffer special damage as a result of that public nuisance have standing to bring a claim.  *See Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001)(stating that "an individual may have a cause of action under a public-nuisance theory if that individual suffered a 'special damage . . . in which the public does not participate.'").

The classes of Plaintiffs alleged in the Complaint, however, are not merely all persons who reside in the Prattville community.   Proposed Class A and Class B narrow the scope of the injury claimed to those within two miles of the facility.  Class A includes persons who have suffered property damages.  Class B is limited to those diagnosed with various health conditions. While the Defendant has argued that no injury has been alleged on behalf of these classes, the court cannot conclude that the Complaint is devoid of such allegations.   The Complaint alleges that waste, debris, and ash have been dumped on and near the Plaintiffs' property.  Complaint at ¶¶ 39, 40.  The Complaint alleges that releases of hazardous substances into residential areas, contaminated air, surface water, soil and groundwater, and seeks remedy for rededication of contamination, diminution in value of property, discomfort, and inconvenience.  *Id.* at ¶ 43.  The Plaintiffs also allege that they have suffered serious, disabling, and life-threatening disease and health conditions. *Id.* at 38.

Class C, however, includes a broader geographic scope of persons within a five mile

radius who were damaged only by noxious odors.  The Complaint does not allege why such injuries are unique to these Plaintiffs as compared to the entire community, which the Plaintiffs also have alleged has been injured.  Therefore, this class of persons as alleged would not appear to have standing to assert a public nuisance claim.

The Motion to Dismiss is, therefore, due to be GRANTED as to the public nuisance claims of proposed Class C, but not Classes A and B.  The public nuisance claim of proposed Class C will be dismissed, but the Plaintiffs will be given additional time in which to plead the unique nature of property interests of those affected by odors created by the Defendant within a five-mile radius of the facility, if they wish to do so.

### B.  Private Nuisance

The private nuisance claim alleged by the Plaintiffs in Count III of the Complaint is that substances released by the Defendant contaminated the air and water, caused the Plaintiffs loss of enjoyment of their property, and caused personal injuries.

The Defendant argues that too many individuals are affected, under the allegations of the Complaint, for the Defendant's alleged actions to constitute a private nuisance, and that the Plaintiffs have not sufficiently alleged an injury.  The Defendant states that the mere fact that three classes of persons in this case, as well as over three hundred persons in the companion case, *Brantley v. IP*, 2:09cv230-WHA, are alleged to have been injured, reveals that this is not a private nuisance case.

As outlined above, Alabama law states that a private nuisance must be limited in its injurious effects to one or a few individuals.  *See Alabama Code* § 6-5-121; *Lower Commerce Ins., Inc.*, 636 So. 2d at 431.

As with the public nuisance claim, the Plaintiffs and Defendant's disagreement largely lies in the number of people who can suffer damage as a result of an alleged nuisance for it to be actionable. The Plaintiffs contend that it would be absurd to construct the statute regarding private nuisance to mean only a few persons can be impacted for an action to be a private nuisance, because if a nuisance affected one person less than the entire community, it would not be public because not all were affected, but it would also not be private because more than a small number were affected. The Plaintiffs argue in brief that in this case it is "conceivable that the persons who have suffered either personal injury or property damage constitute a far smaller subset of the persons and property within the Defendant's sphere of activity." Doc. #39 at page 25. That is not what is alleged in the Complaint, however.

An older Alabama decision provides an example of how Alabama law applies in this area. *Hunter-Benn Co. v. Nelson*, 103 So. 2d 783, 784 (Ala. 1958). In *Hunter-Benn*, the court determined that the plaintiffs adequately alleged a private nuisance where there was a mill which discharged matter through a pipe and then burned that matter, sending smoke onto the plaintiff and his neighbors' property. *Id.* An injury such as a release into the air, therefore, must create damage limited to an area within the community to constitute a private nuisance.

Essentially, in this case, the Plaintiffs have alleged in their Complaint that all members of the Prattville community have been affected by IP's emissions from its facility, but that the Plaintiffs have suffered harm because of their proximity to the facility. The Plaintiffs have not alleged that they are the only persons in the Prattville community affected because of their proximity to the facility. This, therefore, appears to be an allegation of a public nuisance with special damage, not a private nuisance. The court does not, however, want to foreclose at this

7

point an allegation of private nuisance as an alternate theory to the public nuisance claim. Therefore, the court will grant the motion to dismiss, but give the Plaintiffs an opportunity to plead the scope of the nuisance, and resulting injuries, identified as a private nuisance in this case.

C.  Negligence *per se*

In Count VI of the Complaint, the Plaintiffs bring a claim of negligence *per se*, stating that the Defendant violated various provisions of the C.F.R., and other laws and regulations.

To establish negligence per se, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury. *Dickinson v. Land Developers Constr. Co.*, 882 So.2d 291, 302 (Ala. 2003).

With regard to the first element, the Defendant argues that the Plaintiffs have failed to allege that any statute allegedly violated protects a class of persons which is narrower than the general public. In *Parker Building Servs. Co. v. Lightsey*, 925 So. 2d 927 (Ala. 2005), the court addressed a question of first impression: whether violation of a building code constitutes negligence *per se*. The court concluded that because the purpose of the building code was to protect the general public, negligence per se is inapplicable. *Id.* at 931.

The Plaintiffs concede in their brief that statutes and regulations they have cited "were in fact enacted to protect the public health." Doc. #39 at page 31. The Plaintiffs cite *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004), for the proposition that violation of

some of the federal statutes they have cited is negligence *per se*. The discussion pointed to by the Plaintiffs from *Parker*, however, concerned a violation of the federal law, not a state law claim based on that violation, and the discussion concerned the injury-in-fact requirement and causation under the federal law. While the court did note that the jury in that case found the defendants liable for negligence and negligence *per se*, the only discussion of negligence *per se* consists of the following: "We find it difficult to believe that Charles Parker and Sandra Skypek were injured as a result of the defendants' negligence . . . ." *Id.* at 1019 n. 32. This court understands the Plaintiffs' argument to be that because they have alleged violation of statutes which are similar to those involved in *Parker*, negligence per se is established by those violations. This court, however, does not find *Parker*, which was focused on the entirely different issues of the injury-in-fact and causation requirements under federal law, helpful in determining whether the Plaintiffs have alleged a negligence per se claim under Alabama law.

      The Plaintiffs also argue that for this court to accept the Defendant's interpretation of Alabama law, would be to reject the Alabama Court of Civil Appeals' decision in *Harden v. Harden*, 197 So. 94, 97 (Ala. Civ. App. 1940). In *Harden*, the court held that violation of motor vehicle laws is negligence *per se. Id.* The Plaintiffs, therefore, analogize the laws and regulations at issue in this case to motor vehicle laws.

      The Defendant's interpretation of Alabama law is drawn from the holding of the Alabama Supreme Court in *Parker Building Servs., Inc.*, and is consistent with *Harden*. As the Defendant points out, in *Parker Building Servs., Inc.*, the court expressly acknowledged that violation of certain rules of the road designed to protect users of the road is considered negligence *per se*, but stated that the "rules of the road were passed for 'the benefit of a

9

particular class of people who use the public streets and highways for travel.'" *Parker Building Servs.*, 925 So. 2d at 932 (quoting *Simpson v. Glenn*, 88 So. 2d 326, 327 (Ala. 1956)). The laws governing road ways in Alabama have, therefore, been placed in a special category by the Alabama Supreme Court which does not include the laws regulating the paper mill at issue in this case. The law in Alabama is that negligence *per se* is inapplicable when the purpose of a law allegedly violated was to protect the general public. *Id.* at 931.

The Plaintiffs' position is that the laws identified in their Complaint are laws intended to protect the general public. Accepting that position, the court finds that, under Alabama law, negligence per se is not applicable as a claim in this case, and the Motion to Dismiss is due to be GRANTED as to the negligence *per se* claim.

### D.  Abnormally Dangerous Activity

Count VII of the Complaint alleges that the release of hazardous substances, particulate matter, and odors into the environment was a non-natural use of the land and imposed an unusual and extraordinary risk of harm.

The doctrine of abnormally dangerous activity is a strict liability doctrine, to be distinguished from the inherently dangerous activity analysis by which liability can be imposed when the activity is conducted by a subcontractor. *See Borroughs v. Joiner*, 337 So. 2d 340, 343 (Ala. 1976). The standard for finding such liability was demonstrated to be quite high in *Harper v. Regency Dev. Co.*, 399 So. 2d 248, 253 (Ala.1981). In *Harper*, the Alabama Supreme Court, citing the Restatement (Second) of Torts § 520 (1977), set forth the following factors to be considered in determining whether an activity is abnormally dangerous: (1)  evidence of a high degree of risk of some harm to the person, land or chattels of others; (2) likelihood that the

harm that results from it will be great; (3) inability to eliminate the risk by the exercise of reasonable care; (4) extent to which the activity is not a manner of common usage; (5) inappropriateness of the activity to the place where it is carried on; and (6) extent to which its value to the community is outweighed by its dangerous attributes. *Id.*

The Defendant argues that paper mill operations have never been identified as an abnormally dangerous activity in Alabama and, therefore, the Plaintiffs' claim should be dismissed. The Plaintiffs contend that the determination of whether an activity is abnormally dangerous is a determination to be made by the jury, with the benefit of evidence.

In *Turner v. Westhampton Court,* 903 So. 2d 82, 89 (Ala. 2004), the Alabama Supreme Court examined the factors in Restatement (Second) of Torts § 520 (1977), and determined that installation of EIFS is not an abnormally dangerous activity. The court did not limit its analysis to whether the activity was a previously-recognized abnormally dangerous activity, but instead stated that it analyzed all of the relevant factors. *Id.* This court, therefore, cannot conclude that the claim is due to be dismissed merely because the activity alleged is not one previously recognized as an abnormally dangerous activity.

The Defendant also argues that the Plaintiffs cannot demonstrate a pivotal factor, namely, that the paper mill operation is an activity which poses a risk that cannot be eliminated by the exercise of reasonable care. The Defendant contends that the Plaintiffs have alleged in the Complaint that the operation of the facility was in violation of various laws and regulations, not that the facility was operated with reasonable care, so that they have not stated a claim for an abnormally dangerous activity.

The Plaintiffs respond that merely because the analytical factor of the inability to

eliminate risk has been determinative in some cases does not mean that it is required in every case. The Plaintiffs point to the language of the Restatement (Second) of Torts § 520 which states that what is referred to in the doctrine of abnormally dangerous activity is the unavoidable risk which remains even though the actor has taken all reasonable precautions.

In a decision binding on this court, the Eleventh Circuit explained that an ultrahazardous activity under Alabama law "is one that allows the imposition of strict liability, for it is an activity which cannot be performed safely even in the absence of negligence and with the exercise of all reasonable care." *Clark v. Container Corp.*, 936 F.2d 1220, 1225 (11th Cir. 1991). The Eleventh Circuit cited Alabama precedent for the proposition that an abnormally dangerous activity is one in which the risk of harm cannot be eliminated. *Id.* (citing *Harper v. Regency Dev. Co.*, 399 So. 2d 248, 253 (Ala. 1981)).

While the court is not persuaded that the Motion to Dismiss is due to be granted merely because the activity in question has not been previously recognized as an abnormally dangerous activity, the court is bound by Eleventh Circuit precedent, and persuaded by Alabama cases, that under Alabama law, the activity at issue must be one in which the risk of harm cannot be eliminated. The Plaintiffs, in fact, have affirmatively pled that the activity of the Defendant is one for which the risk of harm could not be eliminated by the exercise of reasonable care. *See* Complaint at ¶ 95 c. The lack of specific facts to support this allegation would seem to stem from the apparent contradiction of the Plaintiffs' theory that the Defendant's facility was operated in contravention of various laws and regulations. The court concludes, therefore, that whether the Plaintiffs can ultimately prove this element, either along with, or as an alternative theory to, other claims that the Defendant acted negligently, wantonly, and in violation of

12

various statutes and laws, is a question better left for disposition after consideration of evidence either at the summary judgment stage or at trial. The Motion to Dismiss is, therefore, due to be DENIED as to this claim.

## Motion to Dismiss Without Prejudice

The Defendant urges the court to dismiss the following claims as having been inadequately pled: trespass, negligence, wantonness, and fraudulent suppression.

### A. Trespass

In Count I of the Complaint, the Plaintiffs allege that the Defendant's release of substances and odors contaminated the Plaintiffs' property and constituted a trespass on the property. The Defendants argue that the Plaintiffs have not alleged facts to support two elements of such a claim; namely, an exclusive possessory interest and substantial damage to the land. The Defendants point specifically to the class representatives for proposed Class A and state that the Complaint only alleges that Mr. Benefield and Ms. Scott own property within two miles of the facility, but does not allege that they have a possessory interest in that property. The Class C Plaintiffs are said to have only been damaged by odors.

The Alabama Supreme Court has made it clear that trespass is a wrong relating to the right of possession, and that a plaintiff must have exclusive right of possession. *AmSouth Bank, N.A. v. City of Mobile*, 500 So. 2d 1072, 1075 (Ala. 1986). In *AmSouth Bank*, a landlord was held not to have standing to assert a trespass case because the land was possessed by a tenant at the time. *Id.* at 1075. In addition, allegation of odors or emissions which impacts the use of property is nuisance, not trespass. *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523 (Ala. 1979). The Alabama Supreme Court has explained as follows:

> if the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance; but if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the Res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist.

*Id.* at 530.

The Plaintiffs dispute that they must prove their trespass claim at this point in the proceedings, and further contend that the law does not require an affirmative statement that the class representatives are not landlords.

While this court agrees that notice pleading standards do not require specifically pled facts for a trespass claim, the court is concerned that even the notice pleading standard is not met with regard to the trespass claim because the Plaintiffs have not alleged substantial injury to a possessory interest with respect to at least some of the Plaintiffs' claims, particularly the claims of proposed Class C.  A claim based solely on odors and the interference with use of property would be a nuisance, not a trespass claim. *See Park Center Inc. v. Champion Intern. Corp.*, 804 F. Supp. 294, 302 (S.D. Ala. 1992).  Even with respect to the claims of proposed Class A, while the law might not require a detailed factual allegation of the possessory rights of the named class members, an allegation that property is owned by a person is not an allegation of a possessory right.  The court concludes, therefore, that the Motion to Dismiss should be GRANTED as to the trespass claim in Count I, and the Plaintiffs should be given additional time to allege the nature of the property interest which forms the basis of their trespass claims and the substantial injury to that interest incurred as a result of the Defendant's actions.

### B.  Negligence and Wantonness

14

The Defendant has moved for dismissal of the negligence and wantonness claims in Counts IV and V of the Complaint, stating that the Plaintiffs have not adequately alleged any breach of duty because they provide no allegation about the source of alleged releases of toxic substances or when the release occurred. The Defendants also contend that they have not been given fair notice of the damages suffered by each Plaintiff. Specifically, the Defendants point out that there are allegations that all of the Plaintiffs have suffered property damages, even though on the face of the Complaint, some of the named class representatives do not own property.

The Plaintiffs respond that the Defendant's assertion that it does not have fair notice of the Plaintiffs' claims "is laughable, particularly in light of the fact that the Plaintiffs provided the Defendant with an exhaustive expert report prior to filing these cases." Doc. #39 at page 27. The Plaintiffs characterize the expert report as laying out in exhaustive detail the nature of the toxic releases that are the subject of their claims, and state that the experts conducted dispersion modeling to establish the causal effect of the Defendant's emissions. *Id.* at pages 13, 30. That report, outside of the pleadings, is not relevant to a Motion to Dismiss. The court finds the allegations of Counts IV and V are sufficient to withstand a motion to dismiss, although these matters may be relevant at a later stage of the proceedings, such as consideration of class action certification, definition of classes, or summary judgment. The Motion to Dismiss is due to be DENIED as to those claims.

### C.  Fraudulent Suppression

The pleading requirement for a fraudulent suppression claim is a heightened one. The complaint must set forth the omissions made, the time and place and the person responsible for

15

the omissions, the content and the manner in which they misled the plaintiff, and what the defendant obtained as a consequence of the fraud.  *See Brooks v. Blue Cross/Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997).

The Defendants argue that the allegations of the Complaint regarding the fraudulent suppression claim in Count VIII are deficient because they fail to specify the omissions by IP, give no time frame, and because the allegations that the Plaintiffs were aware of noxious fumes undermines an allegation that they were misled by any omission of the Defendant.  The Plaintiffs respond that their Complaint identifies the substances released, identifies the source of the Defendant's duty to disclose the nature and extent of the releases, and that the Defendant failed to make the disclosure for years.  The allegation of inducement to act in the Complaint is that because of suppression of information, the "Plaintiffs and other neighboring Property owners and residents [were prevented] from fully evaluating and understanding the situation and delayed Plaintiffs' assertion of their legal rights."  Complaint at ¶ 42.

The Defendant's argument that the Plaintiffs should have been on notice of the emissions, based on allegations of odors, and pointing out that the Plaintiffs could have done water testing, etc., is essentially a merits argument, rather than a pleading argument.   The Plaintiffs appear to concede that their Complaint is not pled with the specificity generally required for a fraudulent suppression claim.   The Plaintiffs argue in their brief, but do not plead in the Complaint, that this is a case in which the information is within the control of the Defendant and, therefore, less specificity is required.

While courts in this district have recognized that a lessened standard of pleading may apply if the information is not within the plaintiffs' control, the standard has been applied when

16

lack of control over the information is alleged in the complaint. *See Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1280 (M.D. Ala. 1999).

With regard to timing, the Plaintiffs allege simply that IP knew for "several years" that it was releasing hazardous substances into the environment, but did not inform the Plaintiffs. The court agrees with the Defendant that the Plaintiffs must do more to specify the timing, either by pleading relevant years during which they contend the suppression occurred, or by alleging facts to show why this information is not within the Plaintiffs' control. *Id.* The court also has some concern with the Plaintiffs' allegation of inducement to act, contained within the general allegations, and not within the fraudulent suppression count itself, as it seems to rely in part on inducement to act of persons other than the Plaintiffs.

The Motion to Dismiss is due to be GRANTED, but the Plaintiffs will be given additional time in which to file an Amended Complaint to more fully state a fraudulent suppression claim.

## V. CONCLUSION

For the reasons discussed it is hereby ORDERED as follows:

1. The Motion to Dismiss is DENIED as to the claim for abnormally dangerous activity in Count VII of the Complaint, as to the public nuisance claim in Count II of the Complaint as asserted by proposed classes A and B, and as to the negligence and wantonness claims in Counts IV and V.

2. The Motion to Dismiss is GRANTED with prejudice as to the negligence *per se* claim pled in Count VI of the Complaint.

3. The Motion to Dismiss is GRANTED without prejudice as to the remaining claims.

The Plaintiffs are given until September 21, 2009 to file an Amended Complaint, should they choose to do so, which is complete unto itself in accordance with Local Rule 15.1, and which adequately defines the nature of the property interests and the injuries suffered by the Plaintiffs in their Count I trespass, Count II public nuisance claims of Class C, and Count III private nuisance claims, and which either more specifically pleads the fraudulent suppression claim in Count VIII, or sets forth the factual basis for the Plaintiffs' theory that such information is not within their control.

Done this 21st day of August, 2009.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE