IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES K. BENEFIELD and DONALD RAY )
JOHNSON, individually and on behalf of   )
others similarly situated,              )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )      CIVIL ACTION NO. 2:09cv232-WHA
                                        )
INTERNATIONAL PAPER COMPANY,            )                    (wo)
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER

## I. FACTS AND PROCEDURAL HISTORY

This cause is before the court on a Motion for Class Certification filed by James K.

Benefield ("Benefield") and Donald Ray Johnson ("Johnson") (collectively "the Plaintiffs") on

June 1, 2010 (Doc. #87).

The Plaintiffs originally filed their Complaint in this case on March 20, 2009.   The

Plaintiffs sought leave to and filed a Second Amended Complaint and a Third Amended

Complaint after the Motion or Class Certification was filed.   The Plaintiffs bring claims for

trespass (Count I), public nuisance (Count II), private nuisance (Count III), negligence (Count

IV), wantonness (Count V), abnormally dangerous activity (Count VI), fraud (Count VI).[1]   The

claims alleged in the Complaint, as amended, arise from what the Plaintiffs allege are

---

[1] The Second and Third Amended Complaints both contain two counts designated as Count VI.

contaminations of property by pollutants emitted by the Defendant, International Paper Company ("IP" or "the Defendant").

IP operates a paper manufacturing facility in Prattville, Alabama ("the Facility"). The Plaintiffs allege that the Facility has discharged hazardous substances into the environment for many years, resulting in property damage to properties within a two-mile radius of the Facility.

This case is one of three companion cases. The other two cases are *Brantley, et al. v. Int'l Paper Co.*, 2:09cv230-WHA, and *Brooks v. Int'l Paper Co.*, 2:09cv946-WHA. The *Brantley* case involves claims by hundreds of individual plaintiffs against IP on the same theory as that advanced in this case, but involving both personal injury and property damages. *Brooks* is a case brought on behalf of persons who are deceased against IP, seeking to hold IP liable for wrongful death, also based on emissions from the Facility.

The Plaintiffs filed a Motion seeking Certification of the following class in this case:

All persons who on the date of the filing of the Complaint or Second Amended Complaint:

(a) owned real property[2] located in whole, or in part, within two miles of the outer boundary of the Facility,
(b) which was contaminated by the Hazardous Substances, Particulate Matter, and/or Noxious Odors[3] released into the environment from the Facility; and
(c) who suffered damage as a result in the form of a dimunition in value of the real property in excess of $100.
Excluded from the class are:

---

[2] In the Reply filed in support of certification, the Plaintiffs state that they now limit the class to "residential property owners." *See* Doc. # 122, page 8 n. 3.

[3] In the Reply filed in support of certification, the Plaintiffs state that they now drop the noxious odors aspect of their claims. *See* Doc. # 122, page 8 n.2.

(a) all persons owning contaminated real property within the Class Area who have
suffered any personal injury as a proximate result of the Hazardous Substances,
Particulate Matter, and/or Noxious Odors;
(b) all employees, officers, directors, legal representative, heirs, successors, and
assigns of International Paper.
(c) all Plaintiffs in *Brantley*
(d) all persons who acquired their interest in the real property by inheritance
within 10 years of the date of filing of the Second Amended Complaint.[4]

Doc. #87 at page 3; Second Amended Complaint.

Both Benefield and Johnson live within two miles of the Facility and claim an ownership

interest in their residences.   Both Plaintiffs were married to women who were Plaintiffs in

*Brantley*.  Madge Benefield is now deceased and Shadel Johnson has filed a Motion to Dismiss

her claims in *Brantley*.  *See Brantley*, 09cv230 (Doc. # 117).

The Plaintiffs and Defendant have submitted expert evidence to support their positions

regarding class certification.  The Plaintiffs have presented evidence from Dr. Paul Rosenfield,

who has performed attic dust sampling of eleven properties in the class area, including ten

residential homes and one church, and has conducted air dispersion modeling.  The attic

sampling was conducted to determine contamination of property and the air dispersion was

conducted to determine the degree of impact of pollutants.  Dr. Nicholas P. Cheremisinoff is

another of the Plaintiffs's preferred experts.  He evaluated IP's reporting of emissions and

voiced an opinion on corrosion found within the class area.  Dr. John Kilpatrick is the Plaintiffs's

real estate expert who offered an opinion on how damages could be proven on a class-wide basis

using a Mass Appraisal Model.  Defendant has offered affidavits from Dr. Douglas Daughtery,

---

[4] In the Reply filed in support of certification, the Plaintiffs state that this inclusion in the
Third Amended Complaint was a typographical error and should be disregarded.  *See* Doc. # 122
n. 4.  The Plaintiffs do not explain why this exclusion is contained in the Second Amended
Complaint.

Dr. Walter Shields, and Dr. Thomas Jackson which question the analysis and opinions of the Plaintiffs's experts on class issues.

After careful consideration of all evidence submitted and the briefs of the parties, for reasons to be discussed, the court finds that Motion for Class Certification is due to be DENIED.

## II.  STANDARD FOR CLASS CERTIFICATION

The question of class certification is a procedural one distinct from the merits of the action. *Garcia v. Gloor*, 61 8 F.2d 264 (5th Cir. 1980).[5]  In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir. 1992).  Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Washington*, 959 F.2d at 1560 n.11.

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied.  *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).   "A class action may be maintained only when it satisfies all the requirements of Fed. R. of Civ. Pro. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997).  A court must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.  Furthermore, the court must determine whether the action may be maintained as one of the classes under Rule 23(b).  The party seeking to maintain

---

[5] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

4

the class action bears the burden of demonstrating that all prerequisites to class certification have been satisfied.  *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984).

# III. <u>DISCUSSION</u>

The Plaintiffs request class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3).  Defendant opposes that certification on the grounds that the class is not properly defined, the requirements of Rule 23(a) have not been met,[6] and the Plaintiffs cannot demonstrate that a class could properly be certified under Rule 23(b)(3).  The court addresses each of these arguments in turn.

## A.  Class Definition

For a class action to be certified, there must be an "adequately defined and clearly ascertainable" class.  *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).[7]  "The requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  7A Charles A. Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2010).

---

[6] As a part of the Rule 23(a) arguments, the Defendant challenges the standing of Benefield.  Although standing is a fundamental issue in a class action, because there is another named Plaintiff who is not challenged on the basis of standing, and because standing is challenged based on Benefield's membership in the class, the court will first address the class definition.

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The proposed class definition in this case is inclusive of everyone who, as of the date of the Complaint and Second Amended Complaint, owned residential property within two miles of the outer boundary of the Facility, with the additional qualifiers that the property was contaminated by releases of various substances into the environment from the Facility, and the property owners suffered in excess of $100 of dimunition in value of the real property. As set out above, there are exclusions from the class as well.

The Plaintiffs argue that this class definition is sufficient because it is based on geographic boundaries, allowing people who own real property to know whether they are in the class. The Plaintiffs have also argued that their experts have opined that all of the property within the geographic boundary has been contaminated, so that the class is objectively defined.

The court cannot accept the Plaintiffs's characterization of the definition, or of their preferred expert testimony. Property owners within the defined geographical boundaries have to do more than merely identify those boundaries to know whether they are within the class. They have to own "contaminated" property, and to have suffered a dimunition in value of their property in a specified amount. Therefore, merely knowing that they live within the specified geographical boundaries will not tell the property owners, or the court, who is within the class.

Furthermore, while the Plaintiffs have stated that their experts have opined that all of the property within the defined area is contaminated, the expert report of Dr. Rosenfield concludes that "[a]ll of the members of the communities surrounding the Prattville Mill facility within a 5-mile radius have been and continue to be *exposed* to chemicals . . . ." Plaintiffs's Exhibit E at

page 48 (emphasis added).[8]   He does not offer an opinion that all of the property is "contaminated."  This evidence does not, therefore, provide a definition of "contaminated" property.[9]

The use of "contaminated" in the class definition in the instant case means something more than mere exposure, in view of the fact that the class definition goes on to limit the class to those who have suffered damages in a specified amount.  Expert opinion that specific property has been damaged as a result of actions by IP is an opinion disputed by the Defendant.  *See, e.g.*, Defendant's Exhibit 5 at ¶ 20.   The Defendant also argues that even the Plaintiffs's expert evidence does not support a determination of class-wide contamination, pointing to testimony by Dr. Cheremisinoff.  This expert conducted corrosion sampling and determined that corrosion damage existed in the defined area.  Both his report and deposition testimony, however, reflect that some of the sampling of corrosion which he found could have been caused by moisture, rather than chemicals released by IP.  Plaintiffs's Ex. #4 at page 59; Cheremisinoff Dep. at page 66:11-4. [10]   Therefore, merely because a residential property owner within the class area has

---

[8]  The court notes that the opinion that all property has been exposed to chemicals as described is disputed by Defendant's experts.  *See, e.g.*, Defendant's Exhibit 5.

[9] The Plaintiffs have cited a case in which a class of persons whose real property was contaminated was certified by the court.  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 435 (S.D. N.Y. 2007).   That court did not, however, address any issues with respect to the definition of the term "contaminated," and so the case does not establish that such a determination can be made in an administratively feasible manner.

[10] By acknowledging this criticism by IP, the court is not weighing the experts' evidence, or determining the validity of any opinions, but rather noting this testimony to demonstrate that unnamed class members may think they have suffered damage due to contamination by substances released from IP when in fact they have not.

corrosion on his or her property does not necessarily mean that that person, or the court, can objectively determine that he or she is a member of the class.

As to the class definition requirement that class members have suffered damage in the form of a dimunition in value of the real property in excess of $100, the court presumes that such determination would be made by relying on Dr. Kilpatrick's Mass Appraisal formula, which has been offered by the Plaintiffs. While Dr. Kilpatrick has presented evidence as to the viability of this method, assuming that the court would rely on his method in the face of the Defendant's challenge to it, there is nothing before the court that would indicate which properties have suffered a dimunition in value of $100. Determining which property owners meet the requirement would, therefore, require additional evidence, and factual findings by the court before class members could be identified.

In short, while the Plaintiffs have argued, correctly, that this court should not engage in any merits determination in determining whether the class should be certified, the Plaintiffs have asked the court to find facts, based on disputed evidence, to determine who is within the class. The court concludes, therefore, that it is not administratively feasible for the court to determine whether a particular individual meets the class definition. *See Adair v. Johnston,* 221 F.R.D. 573, 578 (M.D. Ala. 2004) (stating that "[w]hen individualized fact-finding and litigation would be necessary in order to identify class members, class certification is inappropriate.").

Finally, there are exclusions from the class definition. These include property owners who have suffered any personal injury as a proximate result of the Hazardous Substances and Particulate Matter; all employees, officers, directors, legal representative, heirs, successors, and assigns of International Paper; and all Plaintiffs in *Brantley*.

Some of these exclusions are objective and may be administratively feasible to apply, such as the exclusion of *Brantley* plaintiffs.  The existence of the *Brantley* case, however, does beg the question of in which of these cases property damage issues will be resolved if a *Brantley* plaintiff jointly owns property with an unnamed class member in this case, should this case be certified.

The exclusions from the class, however, go beyond the *Brantley* plaintiffs to "persons who have suffered any personal injury as a proximate result of releases from the Facility."   That exclusion will require a determination of which people within the geographic area who own residential property also have personal injuries caused by releases from the Facility, which itself poses causation issues, and therefore makes the class definition improper.  *Cf. Hagen v. Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985) (class not adequately defined that hinged on whether rights had been violated).

The Plaintiffs have argued that unnamed class members can self-select to avoid class membership.  In support of this argument the Plaintiffs quote from an apparently unpublished case, not provided to the court, in which an exclusion was ascertainable which excluded persons with a history of smoking and a diagnosis of lung cancer. See Doc. #122 at page 15 (quoting *Donovan v. Philip Morris USA, Inc*., No. 06cv12234-NG).  The exclusion in this case is not based on an objective criteria such as a diagnosis, however, but instead calls for a determination of injuries "proximately caused" by actions of IP.  Whether or not, as Plaintiffs argue, unnamed class members have incentive to lie about whether they believe they have a personal injury, it is not administratively feasible for the court to determine whether a person fits within the exclusion.

Considering the class definition, including exclusions from the class, the court finds that the class has not been sufficiently defined, and the Motion for Class Certification is due to be denied on that basis.   The court is mindful, however, that it has discretion to allow redefinition of the class to cure deficiencies in its definition.  Therefore, the court will examine the other class certification requirements to determine whether a properly defined class bringing the claims asserted in this case could be certified under Rule 23.

### B. Requirements of Rule 23

To obtain class certification, a plaintiff must demonstrate that the threshold requirements of Federal Rule of Civil Procedure 23(a) and one of the provisions of Rule 23(b) are satisfied.

### 1.  Rule 23(a)

The prerequisites for a class action under Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Pro. 23(a).

Because a fundamental standing issue has been raised by the Defendant in the context of its challenge to the typicality and adequacy requirements, the court will consider the Rule 23(a) requirements of typicality and adequacy, and the incorporated standing challenge, first.

### a. Standing, Typicality and Adequacy

The Defendant has argued that neither Benefield nor Johnson meet the typicality and adequacy requirements of Rule 23(a).  Specifically with regard to Benefield, however, the

Defendant argues that Benefield does not have claims typical of the class, and is not an adequate class representative, because he does not have an ownership interest in the real property at issue, and therefore lacks standing.  The court will, therefore, first address the Defendant's arguments with respect to Benefield.

### 1. Benefield

As noted above, the challenge to the adequacy and typicality of Benefield has been framed by the Defendant primarily as a standing challenge.  The Plaintiffs correctly point out that standing on the part of a class representative is a separate inquiry from typicality or adequacy.  *See Brown v. Sibley*, 650 F.2d 760, 771, 772 (5th Cir. Miss. 1981).

The real property which forms the basis of Benefield's claims is located at 227 County Road 29.  Benefield Dep. at page 61: 22-62: 3.  Benefield testified that the property was left to him and to his wife, Madge Benefield, at the death of her mother.  *Id.* at 62: 22-63: 5.  The Defendant, however, has provided evidence of a deed which states that the sole owner of the property at that address is Madge Benefield.  Defendant's Exhibit 11.  Benefield's response to the questionnaire in this case says that the subject property was acquired by inheritance in 1989. *See* Defendant's Ex. 10. When asked in his deposition, James Benefield testified that he is not aware of any document suggesting that he owns the property, although he thought he owned it along with Madge Benefield.  Benefield Dep. at page 93:6-94:2.

It is apparently undisputed that at some point after the filing of *Brantley*, which names Madge Benefield as a plaintiff, and the filing of the instant case, Madge Benefield died.  The Defendant has provided the court with a copy of a will which leaves the property at issue to

Madge Benefield's three children, and leaves residual property to her three children and two step-children, but does not leave property to her husband. *See* Def. Exhibit # 13. The court has been presented with no other evidence of a transfer of property to Madge Benefield, and no evidence of a transfer of an interest in the property to James Benefield. Furthermore, the Defendant's evidence is not disputed by the Plaintiffs. The Plaintiffs merely state that Defendant has shown at most that the property originally was owned by Madge Benefield, but the Defendant has not shown that James Benefield is now devoid of an interest in the property.

The Plaintiffs bear the burden to prove standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Plaintiffs may be contending that the allegations of their Second Amended Complaint suffice to meet this burden, but once a defendant proffers evidence which calls a plaintiff's standing into question, "'the presumption of correctness that we accord to a complaint's allegations falls away' and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444-45 (8th Cir. 2009) (citations omitted); *see also Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 667-68 (M.D. Fla. 1996) (considering documents in accepting defendant's position that named plaintiff lacked an interest in the case).

The only evidence presented to the court, a statutory warranty deed and the will of Madge Benefield, do not create a present  interest in James Benefield.[11]   Therefore, the court

---

[11]  If James Benefield were to acquire an interest in the property at some point in the future, he would not have had standing at the time of the filing of the Second, or Third, Amended Complaint.  Also, as noted earlier, the Second Amended Complaint also contains an exclusion for persons who inherited property with ten years of the filing of the Second Amended Complaint, which may apply to the extent that James Benefield obtains a property interest from

finds that he does not have standing to assert the class claims.[12]  *See Wooden v. Bd. of Regents*, 247 F.3d 1262, 1273-74 (11th Cir.2001) (stating that standing requires that a plaintiff have suffered a concrete, particularized injury that is caused by the challenged action of the defendant and can be redressed by a favorable court decision).

Contrary to the Plaintiffs's argument, however, the consequence of a finding of no standing as to James Benefield is not that the court's class action inquiry is ended and the case ought to be dismissed.   There is a second named Plaintiff, Johnson, who is not challenged for lack of standing, so the entire case need not be dismissed for lack of standing.  *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir.2000) (stating that "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

### 2.  Johnson

Under the typicality requirement of Rule 23(a), a class representative's claims or defenses must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23 (a)(3).   "In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*,

---

Madge Benefield's estate in the future.

    [12]   The Complaint, as amended, in this case asserts claims, such as fraud, which are not included in the request for certification of the class.  Additionally, Plaintiff Benefield stated in his deposition that he seeks to recover for damage to air-conditioning units in addition to residential real property.  *See* Plaintiffs' Ex. # 9 at pages 101-02.  Plaintiff James Benefield may, therefore, in fact have standing to assert some claims in the case, just not the claims for which he has specifically moved for class certification.  The court also notes, to the extent he is pursuing such claims on his own behalf and not on behalf of the class, his claims are not typical and he is not an adequate class representative. *See, e.g., Drayton v. Western Auto Supply Co.*, No. 01-10415, 2002 WL 32508918 at *6 (11th Cir. March, 11, 2002).

741 F.2d 1332, 1337 (11th Cir. 1984).   While claims of the class do not have to be identical, typicality is intended "to screen out class actions involving legal or factual positions of the class representative which are markedly different from those of other class members." *Liberty Lincoln Mercury v. Ford Marketing*, 149 F.R.D. 65, 77 (D. N.J. 1993) (quotation omitted).

The Rule 23(a) "adequacy of representation analysis encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quotation omitted). Adequacy refers both to the class representatives, and their counsel.  *See Jenkins v. Raymark Indust., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  Although the elements of commonality and typicality have been challenged together, the court will analyze these elements separately.

In its opposition to the Plaintiffs's motion for class certification, the Defendant has argued that Johnson's claims presented administrative difficulties because his wife, a co-owner of the property, was a plaintiff in the *Brantley* case.  Since the time of the filing of the Defendant's opposition to class certification, however, Donald Johnson's wife, Shadel Johnson, has filed a motion to dismiss her claims in *Brantley*, *see Brantley*, 09cv230 (Doc. # 117), and has sought to intervene in this case.  *See Benefield*, 09cv232 (Doc. # 120).  While Shadel Johnson's dismissal from *Brantley* may eliminate the need to determine in which case the Johnsons's property damage claim should be pursued, the Johnsons's situation demonstrates that there may be other putative class members who jointly own property with plaintiffs in *Brantley* who will present that issue.  Donald Johnson would not be an adequate representative for those unnamed plaintiffs.

14

Significantly, Johnson has owned a single-family residential property in the Prattville area since 1995.  Johnson Dep. at page 109: 2-3.   Although the Plaintiffs have narrowed the request for class certification to residential property owners, the Defendant has offered the affidavit of an expert, Dr. Thomas Jackson, which identifies 1223 single family residences within the class area, 324 vacant residential lots, 2 multi-family residential properties, 18 mobile home park properties, and 469 mobile home/site properties.  Johnson may have claims typical of some of these residential property owners, but not the entire class.  *See Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004) (noting that "while the different named plaintiffs may have had claims that were typical of some conceivable subgroups of the overall class, the seven named plaintiffs, collectively, did not have claims that would have been typical of the *entire* class.") (emphasis in original), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

In addition, the named Plaintiffs have brought, and continue to assert, claims for public nuisance, private nuisance, and fraud.  *See* Doc. ## 99, 104.  While these claims are asserted in the Second and Third Amended Complaint, the Plaintiffs do not mention those claims in the motion for class certification.  Johnson and Benefield, therefore, may be pursuing such claims only their own behalf.  The adequacy of Johnson as a class representative is, therefore, undermined by the pendency of those claims.  *See, e.g., Drayton v. Western Auto Supply Co.*, No. 01-10415, 2002 WL 32508918 at *6 (11th Cir. March, 11, 2002) (unpublished) (stating that class representatives seeking remedies for themselves they are not seeking for the class is a conflict such that pursuing those claims would preclude certification).

15

Not only do the named Plaintiffs apparently bring claims which they do not appear to wish to pursue for the class, but they also described damage to personal property as being property damage for which Johnson seeks recovery.  *See, e.g.*, Defendant's Exhibit #14 at page 100:4-13.   In the reply, the Plaintiffs reference damages for personal property that could be made by class members.  *See* Doc. #122 at page 47.  There is no indication before the court, however, that all putative class members are seeking such damages.  Therefore, these claims by Plaintiff Johnson are not typical of the entire class.

In summary, because Johnson's claims are factually the same as only some of the putative class, he is pursuing some damages not sought by the entire class, and he apparently seeks to recover on theories not asserted on behalf of the class, his claims are not typical, and he is not an adequate class representative.[13]

The Plaintiffs have stated that if the class representatives are found to be inadequate, the court cannot consider additional Rule 23 requirements, but must dismiss the case.  Dismissal is required only for lack of standing, however.  *See Brown v. Sibley*, 650 F.2d 760, 771, 772 (5th Cir. Miss. 1981).  There is no question that one named Plaintiff, Johnson, has standing.  The Plaintiffs have alternatively stated that the court should petition the class for a new representative.  To the extent that such a procedure could be appropriate, as will be discussed below, the court does not find that request appropriate in light of the court's remaining Rule 23 findings.

---

[13] If Benefield does have an ownership interest in the property at issue, despite the documentary evidence establishing the contrary, this analysis would also apply to him because the property originally owned by Madge Benefield is only one type of residential property, he brings claims for personal property, and he asserts claims which he apparently did not intend to bring on behalf of the class.

b. Numerosity

To satisfy the numerosity requirement, the prospective class must be so numerous that joinder of the members is impractical.  Fed. R. Civ. Pro. 23(a).   The inquiry is one of practicality of joinder, not just the number of persons.  *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).  Practicability of joinder depends on "size of the class, the ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Id.*

The Plaintiffs initially cited the court to an exhibit which lists 1,500 properties. *See* Plaintiffs's Exhibit C.  The Plaintiffs state that the impracticability of joinder is apparent from the sheer number of Plaintiffs.  Of course, in the Reply, the Plaintiffs have now narrowed the class they seek to certify to owners of residential property, which excludes at least some people from the class who are in the list of 1,500 properties.  The court will assume for purposes of analysis, however, that there are 1,500 properties at issue.

Defendant argues that numerosity is not met in this case, primarily because the companion *Brantley* litigation, which also involves property damage, demonstrates that joinder is not impracticable.

As previously noted, the *Brantley* case involves many plaintiffs's claims, proceeding on the same theory of liability, and seeking property damage in addition to damages for personal injury.   The parties in the *Brantley* case are proceeding in an orderly fashion, and have agreed on a method of proof which isolates certain claims and allows for manageability of the case despite the large numbers of plaintiffs.  Even if the named Plaintiffs in the instant case were given an opportunity to refine their class definition, in view of the availability of the same type

17

of damages to plaintiffs in the separately proceeding *Brantley* case, the court cannot conclude

that the Plaintiffs have adequately demonstrated that joinder is impracticable.

### c. Commonality

Rule 23(a) requires that there be common questions of law or fact common to the class.

Fed. R. Civ. Pro. 23(a).   Defendant does not address the commonality requirement separately,

but rather in the context of the predominance requirement, arguing that to the extent that there

are common questions, they do not predominate.   *See* Doc. #116 at page 12, n.0.   Therefore, the

court will accepts that commonality may have been met in this case.

Having found that only the Rule 23(a) commonality requirement has been satisfied, even

assuming the class definition is sufficient, the court concludes that class certification is due to be

DENIED.   The court will, however, address the requirements of Rule 23(b), to the extent that the

Plaintiffs contend that the Rule 23(a) deficiencies can be remedied by amendment.

### 2.  Requirements of Rule 23(b)

The Plaintiffs contend that this case can be certified under Rule 23(b)(3).   Rule 23(b)(3)

requires both that questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.   Fed. R. Civ. Pro. 23(b)(3); *Vega*

*v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1277 (11th Cir. 2009).

The court turns first to the predominance inquiry.

### a.  Predominance

In *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.2004), the Eleventh Circuit

reasoned that "[w]here, after adjudication of the classwide issues, plaintiffs must still introduce a

great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."

First, as previously noted, the Plaintiffs continue to assert in the Second and Third Amended Complaints, filed after the Motion for Class Certification, claims for public nuisance, private nuisance, abnormally dangerous activity, and fraud. *See* Doc. ## 97, 104.  The class complaints allege reliance on false representations by "each member of the class."  *See* Doc. # 97 at ¶ 99 and Doc. # 104 ¶ 99.  These claims, particularly the fraud claim, may require highly-individualized determinations.  *See, e.g. Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir. 1996) (stating that a fraud class action cannot be certified when individual reliance will be an issue).  While it appears that the Plaintiffs do not seek to pursue these claims on behalf of the class because they are omitted from the Motion for Class Certification,[14] the court agrees with the Defendant's position that the assertion of public nuisance, private nuisance, and fraud claims either undermines the predominance requirement of Rule 23(b)(3), if the claims are asserted on behalf of the class, or, as earlier discussed, undermines the adequacy of the representatives under Rule 23(a), if the claims are only being pursued by the named Plaintiffs.

The most significant issue which arises in the predominance inquiry in this case, however, is the Plaintiffs's contention that, in addition to being able to show that IP was negligent, for example, by presenting evidence of IP's knowledge, disposal practices, and

---

[14]  The Plaintiffs do not clarify this point in their Reply, and in fact note that they are seeking damages for fraud in arguing in favor of class certification.  Doc. #122 at page 34, n.29.

characteristics of the chemicals at issue, on a class-wide basis, they will also be able to prove causation and damages on a class-wide basis.

The Defendant argues that the Plaintiffs will not be able to show contamination, injury, causation, or damages on a class-wide basis.   The Defendant engages in lengthy analysis of the Plaintiffs's proffered expert testimony, to which the Plaintiffs respond that the Defendant has prematurely raised issues as the admissibility of expert testimony.

The court agrees that is not appropriate to weigh competing experts's testimony, or to determine the admissibility of expert testimony, at the class certification stage.   The court does have strong concerns, however, about the basis of the Plaintiffs's contention that the experts can address the issues they have identified on a class-wide basis.

For example, the Plaintiffs contend that damages will be resolved on a class-wide basis by using a Mass Appraisal method developed Dr. John Kilpatrick.   Dr. Kilpatrick has opined both that the damages calculation can be handled by Mass Appraisal and that it is more accurate than individual appraisals.   Dr. Kilpatrick testified, however, that if property was owned by different people in succession, his method would not apportion damages to different owners, and "[t]hose are determinations to be made by the court." Kilpatrick Dep. at page 193: 17-8. Furthermore, Dr. Kilpatrick only based his model on "improved residential properties," whereas the class has only been narrowed to residential properties.   Plaintiff's Ex. 7 at page 3.   In addition, Dr. Kilpatrick offers an opinion as to a dimunition in property value, but the Plaintiffs seek damages for all economic losses, "reasonable and just actual and consequential damages for disruption of Plaintiffs' lives," and "out-of-pocket expenses for clean up and remediation."  Doc. #97 at page 33; Doc. #104 at page 30.

In addition, named Plaintiffs Johnson and Benefield described damage to personal property in their depositions as being property damage for which they seek recovery. Defendant's Exhibit # 9 at page 101-02 and Exhibit # 14 at page 100:4-13.  The Plaintiffs state in their Reply that class members who claim damage to personal property "would be required to list that property and make it available for appraisal by the appraisers."  Doc. #122 at page 48. While the Plaintiffs state that this is not a significant determination, it is part of the calculation of damages which is individualized.  Clearly, therefore, at least some individual damages determinations will have to be made.

The court recognizes that in the Eleventh Circuit "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Services, Inc. v.  Exxon Corp.*,  333 F.3d 1248, 1261 (11th Cir. 2003).   The court, however, has similar concerns about causation issues, which make consideration of individualized damages appropriate.  *See Klay*, 382 F.3d at 1260 (stating, "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification).

Using the Plaintiffs's negligence claim as an example, the court notes that the Plaintiffs must show that the unnamed class members suffered injury as a proximate cause of the actions of the Defendant.  *See, e.g., QORE, Inc. v. Bradford Bldg.*, 25 So. 3d 1116, 1123 (Ala. 2009) (stating that negligence requires a showing of duty, breach, injury, and proximate cause).  The Plaintiffs insist that their expert testimony establishes causation on a class-wide basis because the experts have offered the opinion that the class area is uniformly contaminated by materials emitted from the Facility.

21

The court has viewed the expert reports offered by the Plaintiffs.  The experts do not
speak in terms of class-wide causation and injury.  As pointed out above, Dr. Rosenfield offers
an opinion that all communities surrounding the Facility have suffered "exposure" to hazardous
substances.  His opinion as to property damage is that "[c]ommunity members in the Prattville
area have sustained property damage caused by emissions from the Mill . . . ." and that
substances emitted from the mill "can cause damage to property."  Plaintiff's Ex. #5 at page 48.
The expert speaks in general terms that property has been damaged and can be damaged, but
does not purport to establish on a class-wide basis that all residential property owners in the class
area suffered injury to property.

Dr. Cheremisinoff, another of the Plaintiffs's experts, has offered the opinion that metal
surfaces in the community have suffered corrosion.  His report also states, however, that five
samples of corrosion in his study had no evidence of chlorides or sulfides, and that moisture may
have caused the corrosion, rather than actions by IP.  Plaintiff's Ex. #4 at page 59.[15]

In addition, Dr. Kilpatrick agreed when asked in his deposition that he has offered an
opinion as to the methodology to assess damages, not whether there were in fact any damages.
*See* Kilpatrick Dep. at page 12:24-13:15.

The expert testimony in this case, therefore, at most, expresses opinions that there have
been releases of substances by IP which can cause property damage, and which have caused
property damage to some class members.  Even in light of this testimony, individualized
determinations will have to be made of whether each class member has suffered injury and

---

[15] The court notes this not as an evaluation of the validity of his opinion, but as an
indication that even accepting his opinion, individualized determinations will have to be made of
the cause of corrosion within the class area.

whether that injury was proximately caused by the Defendant's actions.  This case is, therefore, distinguishable from cases cited by the Plaintiffs as cases where Rule 23(b)(3) class actions were certified.

One case relied upon by the Plaintiffs, *Sher v. Raytheon Co.*, 261 F.R.D. 651 (M.D. Fla. 2009), is a case involving groundwater determination in which the court concluded that common issues predominated.  Specifically with regard to the individualized damages determination, the court relied upon the Mass Appraisal method of Dr. Kirkpatrick which is also relied upon in this case.  In that case, however, the court identified specific "unique facts" including (1) that there was only one defendant which had acknowledged that materials had migrated from the facility and it was responsible for the clean up, which "mitigates many . . . causation concerns;" (2) the discharged materials were identified and known to cause harm; and (3) the county appraiser already uses mass-appraisal analysis to determine property values and had determined that the properties suffered a dimunition in value because of the contamination.  *Id.* at 670-71.

In this case, the evidence before this court, including Dr. Kirkpatrick's Mass Appraisal method, does not fit into the *Sher* unique facts, where a 23(b)(3) class was certified, but is instead closer to that discussed in *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006), where class certification was denied.  In *Fisher*, the plaintiff brought, among others, claims for nuisance, trespass, and negligence, stating that the defendant's facility had contaminated their property, impairing their property values.  The court discussed some of the common methods of proof, such as disposal practices and chemical properties, but ultimately determined that common issues would not predominate because the existence and degree of liability to a particular plaintiff would turn on whether the plaintiff's property was contaminated,

23

the source of the contamination, whether the contamination is severe enough to cause a dimunition in value, whether the plaintiff acquired the property before or after the dimunition in value, and when the plaintiff was on notice of the contamination for purposes of the statute of limitations. *Id.*[16]

In this case, as in *Fischer*, where there are causation and damages issues which will have to be individually determined, common questions do not predominate.

### b. Superiority

As noted above, certification under Rule 23(b)(3) also requires that a court determine that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).   In evaluating whether a class action is superior, the court's "focus is not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay,* 382 at 1269.   Four relevant factors are set forth in Rule 23(b)(3), which are as follows:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties to be encountered in managing a class action.

---

[16] In the instant case, each side has argued that the statute of limitations defense raised favors its position on predominance.  Even if the Plaintiffs are correct that the statute of limitations defense can be determined on a class-wide basis, common issues still will not predominate over the causation and damages issues.

Rule 23(b)(3).[17]

"The existence of other actions may indicate either that there are other methods to adjudicate the controversy or that class certification is superior." *In re Prudential Ins. Co. of America Sales Practices Litigation,* 962 F. Supp. 450, 524 (D. N.J. 1997). In this case, the existence of *Brantley* indicates that a class action is not superior under the Rule 23(b)(3) factors.

As to the first factor, the fact that hundreds of individuals are proceeding against the same Defendant in *Brantle*y for damages from the same alleged emissions of substances as are alleged in this case is an indication of the putative class members' interests in individually controlling the prosecution or defense of separate actions. This analysis is also bolstered because public nuisance, private nuisance, abnormally dangerous activity, and fraud claims are brought in this case and in *Brantley*.

The second Rule 23(b)(3) factor, the extent and nature of any litigation concerning the controversy already begun by or against class members, weighs heavily against a finding that a class action is superior. The court first notes that persons already bringing claims in *Brantley* may, as did the wife of the named Plaintiff James Johnson, own property jointly with putative class members. Therefore, while not an action begun by the putative class member, *Brantley* may already involve property which would be part of the putative class action. Furthermore, even though not currently plaintiffs in *Brantley,* putative class members could become plaintiffs in that on-going lawsuit. The Scheduling Order entered in *Brantley* allows for the addition of

---

[17]  Although listed in Rule 23(b)(3) as factors for consideration for both factual findings, the court will, as has the Eleventh Circuit, *see Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), analyze the four factors with respect to the finding of whether the class action is superior to other available methods for adjudicating the controversy.

plaintiffs in that case by a specified procedure. *See Brantley*, 09cv230, Doc. ## 92 at page 4, 93. The court is persuaded that "if those promoting the use of the class action cannot show that they would be unable to join or intervene in one or more individual actions or that individual actions would be impractical, resort to Rule 23" is unnecessary.  7A Charles A. Wright, et al., *Federal Practice and Procedure* § 1779, page 163 (3d ed. 2005).

Significantly, many of the issues raised in this case will have to be resolved in the *Brantley* case.   In fact, the very issues the Plaintiffs have identified as being common to the putative class, such as IP's knowledge and disposal practices, will be issues in *Brantley*.   In addition, while the Plaintiffs have stated that a class action is preferable for determining an award of punitive damages for IP's actions, punitive damages are also sought in *Brantley*.  *See Brantley*, 09cv230 (Doc. #42, page 32).

Because many of the same issues which are raised in this case will have to be decided in *Brantley,* proceeding with a class action and with the *Brantley* separate plaintiffs's claims would be inefficient.  *Cf. Gregory v. Finova Capital Corp.,* 442 F.3d 188, 191 (4th Cir. 2006) (stating that "[i]t would be inefficient and needlessly duplicative to allow the class action to go forward when the adversary proceeding will likely adjudicate this controversy in the normal course of TGI's bankruptcy.").  The pendency of *Brantley*, therefore, counsels against a finding that a class action is superior to other methods of adjudication.  *See McGuire v. Int'l Paper Co.*, No. 1:92cv593BRR, 1994 WL 261360 at *8 (S.D. Miss. Feb. 18, 1994) (federal class action was unmanageable and not superior to individual actions in part because individual actions were proceeding against the same defendant).

Although the third Rule 23(b)(3) consideration, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, mainly applies when cases are proceeding in different fora, it is related to the second factor in one respect, in that the court is persuaded that it must evaluate whether allowing the class action to proceed "will prevent the duplication of effort and the possibility of inconsistent results."  7A Charles A. Wright, et al., *Federal Practice and Procedure* § 1780 (3d ed. 2005).  Proceeding in a class action separate from *Brantley* would not serve those interests, whereas concentration of individual claims in *Brantley* would serve the interest of preventing the duplication of effort.  The court concludes, therefore, that  "[r]ather than allowing the class action to go forward, [it should] encourage the class members who have instituted the Rule 23(b)(3) action to [to join] the other proceedings." *Id.*

The court also has determined above that there are individualized liability issues, such as causation, and damages issues, which the Plaintiffs's experts do not purport to address on a class-wide basis.  Additionally, the possible concurrent interests in property as between putative class members and plaintiffs in *Brantley* raises a management issue.  There are, therefore, management issues presented by the class action which weigh against a finding of the class action as a superior method of litigation in this case, under the final Rule 23(b)(3) factor.

The Plaintiffs have argued that a class action is superior in part because 1,500 properties are far in excess of the claims as asserted in *Brantley*.   As noted above, at least some of those properties at issue in the putative class may be jointly owned by a *Brantley* plaintiff.  In addition, there is nothing before the court to indicate how many of the owners of the 1,500 properties would consider themselves to have suffered significant residential property damage so as to

27

pursue individual claims.  The parties in the *Brantley* case have agreed on a method of proof which examines certain claims and allows for manageability of the case despite the large numbers of plaintiffs.  The Plaintiffs have not demonstrated that a similar process could not be applied to successfully manage the property claims at issue in the instant case.  Therefore, based on all the relevant factors, the court finds that the Plaintiffs have not demonstrated that a class action is superior to other available methods of adjudication, particularly in light of the currently pending *Brantley* suit.

Having determined that neither predominance of common issues nor superiority of a class action have been established in this case, the court concludes that the Motion for Class Certification is due to be denied on the alternative basis that it cannot be certified as a Rule 23(b)(3) class.

## IV.  <u>CONCLUSION</u>

For the reasons discussed, the court having concluded that the Plaintiffs have failed to establish the requirements for class certification in Rule 23(a) and Rule 23(b)(3) of the Federal Rule of Civil Procedure, it is hereby ORDERED that the Motion for Class Certification (Doc. #87) is DENIED.

The case will proceed on behalf of James K. Benefield and Donald Ray Johnson individually.

DONE this 20th day of October, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE